## STATE OF CONNECTICUT *v.* FREDERICK PAYNE (4876)

BORDEN, DALY and BIELUCH, Js.

Argued June 11—decision released September 15, 1987

*John F. Kavanewsky, Jr.,* for the appellant (defendant).

*Robert J. O'Brien,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Margot Rubin* and *William K. Lietzau,* legal interns, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of larceny in the second degree in violation of General Statutes (Rev. to 1981) §§ 53a-119 (8) and 53a-123 (a) (1).[1] The sole

---

[1] General Statutes (Rev. to 1981) § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." This portion of the statute is unchanged.

General Statutes (Rev. to 1981) § 53a-123 (a) (1) provides: "A person is guilty of larceny in the second degree when: (1) The property consists of

issue raised on this appeal is whether the trial court erred by failing to instruct the jury on each essential element of the crime with which the defendant was charged. We find error.

The defendant was charged by an information which stated in pertinent part as follows: "On or about the 7th day of April, 1981, between 12:00 p.m. and 1:00 p.m. the said FREDDY PAYNE was in possession of property, to wit: a Kawasaki motorcycle stolen from 320 Alden Avenue on April 6, 1981, knowing that it had probably been stolen or believing that it had probably been stolen, in violation of Section 53a-123 (a) (1) of the Connecticut General Statutes."

The evidence supported a finding that sometime between 6 p.m. on April 6, 1981, and 8:30 a.m. on April 7, 1981, an orange-red Kawasaki motorcycle belonging to James Thibault was taken from its parked position in front of his residence in New Haven. At about noon on April 7, 1981, Detective John Sirocco of the Hamden police department observed two black men aboard a motorcycle. When he began to pursue it in order to view the registration number, it took off at a high rate of speed. He continued pursuit, and during the chase the hat of the passenger blew off and was later retrieved by another officer. It was determined to contain a tag bearing the name of Douglas Antrum. Sirocco soon lost sight of the motorcycle in the Dixwell Avenue and Orchard Street vicinity of New Haven. Meanwhile, Detective William White of the New Haven police department, who had been advised to look out for a motorcycle with two black males aboard, proceeded to the area of Dickerman Street in New Haven. When he arrived, he found behind a house a motorcycle which fit the description of the one Sirocco

a motor vehicle." Subdivision (1) has been revised to provide: "(1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars." General Statutes § 53a-123 (a) (1).

had chased. A concerned citizen advised White that he had seen two black males jump off the motorcycle and run to the second floor of a house at 45 Dickerman Street. White went to 45 Dickerman Street and discovered the defendant and Antrum on the third floor, and placed them under arrest. Shortly thereafter, Sirocco arrived on the scene and identified the defendant and Antrum as the two he had seen on the motorcycle. Additionally, he identified the motorcycle as the one on which he had earlier seen them. Moreover, latent fingerprints removed from the motorcycle were identified as belonging to the defendant. Thibault identified the motorcycle as the one that was taken from his house.

The defendant presented evidence that he had been at his girlfriend's apartment at 45 Dickerman Street since the evening of April 6 and until the time the police arrived. Antrum testified on the defendant's behalf and stated that he had been a passenger on the motorcycle in question which was driven not by the defendant, but by a person known as Dezzel. Antrum further testified that he and Dezzel abandoned the motorcycle on Dickerman Street, and that he proceeded to the defendant's girlfriend's apartment where he and the defendant were later arrested.

The trial court instructed the jury that "[a] person is guilty of larceny in the second degree when the property consists of a motor vehicle. A motorcycle is considered a motor vehicle under the statute."[2] Thereafter, the court charged the jury on the general definition of larceny under General Statutes § 53a-119, see footnote 1, supra; and defined various terms including "prop-

---

[2] We note that the trial court failed to instruct on the value element of General Statutes (Rev. to 1981) § 53a-123 (a) (1). See footnote 1, supra. The defendant has not, however, raised any claim in this regard. See General Statutes § 53a-121 (a) (3) (when value of stolen property not ascertained, its value deemed to be less than fifty dollars).

erty," "owner," "deprive," "appropriate," "intent," "wrongful," "withhold." The court's final summary to the jury with regard to the larceny charge was as follows: "Thus, to find the defendant guilty of larceny in the second degree, the state must prove that the property consisted of a motor vehicle; secondly, the state must prove that the defendant had the intent to deprive the owner of the motor vehicle permanently or he intended to appropriate that motor vehicle to himself or a third person on a permanent basis who was not the owner; thirdly, the state must prove beyond a reasonable doubt that the defendant did in fact wrongfully take, obtain or withhold such motor vehicle from the rightful owner."

The defendant claims that the information charged him with larceny by receiving stolen property in violation of General Statutes (Rev. to 1981) § 53a-119 (8)[3] and that the trial court erred by failing to instruct the jury on the essential elements of that statute. We view this as a claim that the defendant was denied his right not to be convicted except upon proof beyond a reasonable doubt as to each element of the crime charged, under the due process clause of the federal constitution. U.S. Const., amend. XIV; see *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Vessichio,* 197 Conn. 644, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986). The defendant did not raise this claim at trial, and seeks review under *State* v. *Evans,* 165 Conn. 61, 326 A.2d 576 (1973). The defendant's claim clearly implicates a fundamental constitutional right ade-

---

[3] Subdivision (8) of General Statutes (Rev. to 1981) § 53a-119 provides, in relevant part "Receiving stolen property. A person is guilty of larceny by receiving stolen property if he receives, retains or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner." This part of the statute is unchanged.

quately supported by the record, and is reviewable. *State* v. *Vessichio,* supra, 648–49; *State* v. *Smith,* 194 Conn. 213, 217, 479 A.2d 814 (1984); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978).

The information filed by the state charged the defendant with larceny by receiving, even though it did not specifically enumerate General Statutes (Rev. to 1981) § 53a-119 (8). The language in the information was virtually identical to the language contained in the statute. The comments to § 53a-119 point out that it contains both a broad definition of larceny and an enumeration of ten specific ways of committing the offense, including larceny by receiving. Moreover, the comments state that "the receiver is treated, not as a principal to the theft itself, but as a separate offender. Thus, he must be charged as such." Commission to Revise the Criminal Statutes, Penal Code Comments, Connecticut General Statutes (West), p. 39. In this case, by adopting the language of subsection (8) for use in the information, it must be assumed that the state intended to charge the defendant as a receiver.

Having elected to charge the defendant as a receiver, the state was required to present proof on the following elements: (1) the receipt or retention by the defendant of a motorcycle; (2) knowing that it has probably been stolen or believing that it has probably been stolen; and (3) that the property is not received or retained for the purpose of restoring it to its owner. General Statutes § 53a-119 (8). See D. Borden & L. Orland, Connecticut Criminal Jury Instructions, § 13.2; see generally, *State* v. *Anonymous (83–FG),* 190 Conn. 715, 463 A.2d 533 (1983). Our review of the jury charge leads us to conclude that the trial court entirely failed to instruct the jury on these essential elements.

"In a criminal case, the state must prove, and the trial court must instruct the jury on, each essential ele-

ment of the crime charged. See *Patterson* v. *New York,* 432 U.S. 197, 204, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *Mullaney* v. *Wilbur,* 421 U.S. 684, 698, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* [supra, 364]; see also *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); *State* v. *Griffin,* [supra, 162–63]. A trial court's failure to instruct on any of these elements warrants reversal regardless of whether the defendant objected at trial. See *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982)." *State* v. *Harman,* 198 Conn. 124, 133–34, 502 A.2d 381 (1985). "It cannot be considered harmless error for a jury 'to find an accused guilty without even knowing what are the essential elements of the crimes charged.' *State* v. *Griffin,* supra, 162–63 . . . . Put another way, the failure to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right 'to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are.' *United States* v. *Natale,* 526 F.2d 1160, 1167 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 193 (1976), citing *United States* v. *Fields,* 466 F.2d 119, 121 (2d Cir. 1972). Of course, any such error is not cured just because an appellate court is satisfied after the fact of conviction that sufficient evidence was before the jury so that it would or could have found that the state proved the missing element had the jury been properly instructed. After all, 'when [the defendant] exercised his constitutional right to a jury, he put the [state] to the burden of proving the elements of the crimes charged to a jury's satisfaction, not to ours. . . .' " *State* v. *Gabriel,* 192 Conn. 405, 414, 473 A.2d 300 (1984).

It is clear that the trial court erred by failing to instruct the jury on all the essential elements of the crime charged. It is beyond peradventure that it was

reasonably possible that the jury was misled by the court's instructions. This is because the jury was not provided with the pertinent principles of substantive law to apply to the facts of the case and, therefore, could not have found each essential element proven beyond a reasonable doubt. *State* v. *Griffin,* supra, 163. This case is unlike others which have involved a *defective* instruction rather than *no* instruction on an essential element. See *Henderson* v. *Kibbe,* 431 U.S. 145, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977); *State* v. *Vessichio,* supra, 648–49. *State* v. *Smith,* 194 Conn. 213, 216–20, 479 A.2d 814 (1984); *State* v. *Griffin,* supra, 160–65. Nor is it similar to cases which involve a claim that the court erred in failing to define an essential element. See *State* v. *Vessichio,* supra, 650–51; *State* v. *Grant,* 6 Conn. App. 24, 27–32, 502 A.2d 945 (1986). In those cases, a reviewing court was able to determine that it was not reasonably possible that the jury was misled by the trial court's instructions, because the jury had at least been instructed to some extent on the applicable substantive law. This case, by contrast, requires no speculation as to the presence of jury confusion, because the complete omission of any instruction on larceny by receiving under General Statutes (Rev. to 1981) § 53a-119 (8) guaranteed that the jury was unable to perform its task properly.

We also decline to apply a harmless error analysis to this type of instructional error. We recognize that in *Chapman* v. *California,* 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967), the United States Supreme Court rejected the notion that all federal constitutional errors necessarily require reversal of criminal convictions. In that case, the court set forth the principle that a constitutional error may be held to be harmless if the reviewing court concludes that it was harmless beyond a reasonable doubt. In *Chapman,* how-

ever, and in the more recent case of *Rose* v. *Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), the court also recognized that some constitutional errors can never be treated as harmless. "[S]ome errors 'are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case.' *Delaware* v. *Van Arsdall,* 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *Young* v. *United States,* 481 U.S. 787, 107 S. Ct. 2124, 2138–39, 95 L. Ed. 2d 740 (1987). "An error is fundamental if it undermines confidence in the integrity of the criminal proceeding. *Rose* v. *Clark,* [supra]." Id.

Examples of constitutional errors that can never be considered harmless were enumerated in *Rose* v. *Clark,* supra, and include the use of a coerced confession; *Payne* v. *Arkansas,* 356 U.S. 560, 78 S. Ct. 844, 2 L. Ed. 2d 975 (1958); the complete denial of counsel; *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); and the lack of an impartial judge. *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). The Supreme Court also stated in *Rose* v. *Clark,* supra, that "harmless-error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury . . . 'regardless of how overwhelming the evidence.'. . . This rule stems from the Sixth Amendment's clear command to afford jury trials in serious criminal cases. See *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). Where that right is altogether denied, the State cannot contend that the deprivation was harmless because the evidence established the defendant's guilt; the error in such a case is that the wrong entity judged the defendant guilty." We conclude that the total failure in this case to instruct on the essential elements of the crime charged is analogous to a directed verdict.

The trial court, by its failure to instruct the jury on the essential elements, effectively deprived the jury of the opportunity to consider whether those elements were proven. The defendant, however, had elected a trial by jury and was entitled to have that entity apply the substantive law to the facts of the case. The United States Supreme Court warned that the error in *Rose* v. *Clark,* supra, was " 'distinguishable from other instructional errors that prevent a jury from considering an issue.' " Id., 580 n.8. It would therefore be inappropriate for this court to make the determination of whether the evidence supported a finding on each element of larceny by receiving. This is especially so since we must work with a cold record and have not had the opportunity to observe and assess the credibility of live witnesses.

This conclusion is consistent with the only case we have found which squarely faced the issue of whether "a trial court's failure to instruct on an essential element of an offense can ever be harmless error." *Hoover* v. *Garfield Heights Municipal Court,* 802 F.2d 168, 175 (6th Cir. 1986). The Sixth Circuit concluded, as do we, that such an error is one of the exceptional constitutional errors to which the *Chapman* harmless error analysis does not apply. *Hoover* v. *Garfield Heights Municipal Court,* supra, 178.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.