## STATE OF CONNECTICUT *v.* WILLIAM HAMILTON, JR.
### (10692)

FOTI, LANDAU and FREEDMAN, Js.

Argued November 3, 1992—decision released January 19, 1993

*Elizabeth M. Inkster,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b). The defendant was committed to the custody of the commissioner of correction for a total effective sentence of thirty-five years. He received twenty year concurrent sentences for the robbery and burglary convictions, a ten year consecutive sentence for the attempted assault conviction, and a five year consecutive sentence for carrying a pistol without a permit.

On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction for the offense of carrying a pistol without a permit, (2) the trial court improperly instructed the jury on the offense of carrying a pistol without a permit by failing to define an essential element of the crime, (3) the evidence was insufficient to sustain a conviction for the offense of attempted assault in the first degree, and (4) the trial

court improperly denied his request for a continuance. We reverse the judgment of the trial court in part and affirm it in part.

The jury could reasonably have found the following facts. On July 19, 1990, between 10 p.m. and 10:30 p.m., nineteen year old Michael DelGais, Jr., was in the backyard swimming pool at his family home in Bridgeport, with his teenage friends, Cynthia Stone, Ila Swinton and Robin Posey, when the defendant walked up to the pool holding a gun that was shorter than one foot in length. After asking Michael who was in the house and determining that other family members were inside, the defendant ordered the teenagers into the house at gunpoint. He walked the group through the kitchen into the living room and ordered the young women to sit down, while he took Michael to the foot of the stairs to call his father. Michael did so and, hearing alarm in his son's voice, Michael DelGais, Sr., came out of his bedroom and started down the stairs. As the father saw the defendant holding a gun and standing next to his son at the foot of the stairs, Michael, Jr., told his father that the defendant wanted money. Michael, Sr., then jumped back and hit the panic button on his home security alarm. As the alarm sounded and the defendant started coming up the stairs, Christopher DelGais, a younger brother of Michael, Jr., came out of his bedroom but was shoved back into the room by his father. Another brother, Gerry, opened his bedroom door, looked out, and saw the defendant raise the gun. Gerry ducked back into his room, as the defendant fired the gun up the stairway. The bullet lodged in the ceiling of the upstairs landing. After the shot was fired, the young women who had been seated in the living room ran out into the yard and hid near a shed. The defendant then went upstairs and pointed the gun at Michael DelGais, Sr., who told him not to fire it again, that he would get what the defendant

wanted. The elder DelGais then proceeded at gunpoint to his bedroom, took $900 of "vacation money" off a dresser and gave it to the defendant. The defendant kept the gun pointed at Michael, Sr.'s chest while they were in the bedroom.

The defendant, who was masked, removed his mask when he came to the top of the stairs. Michael, Sr., got a good look at him and was able to make a positive identification of the defendant at both a photographic lineup and a courtroom identification.

## I

The defendant first claims that the evidence was insufficient to sustain his conviction on the charge of carrying a pistol without a permit. While the defendant may have conceded at trial that the state had presented a prima facie case on the charge of carrying a pistol without a permit, he did not concede that the state had proven each and every essential element of that crime beyond a reasonable doubt. The defendant did not raise the issue of whether the state failed to prove that the weapon fell within the aegis of General Statutes § 29-27; he neither made a specific request to charge nor excepted to that portion of the charge. We nevertheless will review this claim because "there is abundant authority that states that claims of insufficiency of the evidence fall within the ameliorative penumbra of *State* v. *Golding,* [213 Conn. 233, 567 A.2d 823 (1989), and *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973)]; see *State* v. *Aleksiewicz,* 20 Conn. App. 643, 645 n.1, 569 A.2d 567 (1990) . . . ." *State* v. *Estrada,* 26 Conn. App. 641, 659, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992).

"When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis,* 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489

U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice,* 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991); *State* v. *Hopes,* 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson,* 213 Conn. 243, 254, 567 A.2d 1173 (1989)." *State* v. *Lago,* 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *State* v. *Boykin,* 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564.

The defendant specifically claims that the evidence was insufficient to establish the essential element of the barrel length of the gun and, therefore, the jury had to resort to speculation and conjecture in finding him guilty of possessing a pistol without a permit. We do not agree.

A jury may draw reasonable, logical inferences from the facts proven, but may not resort to speculation and conjecture. *State* v. *Rodriquez,* 200 Conn. 685, 687, 513

A.2d 71 (1986). The state does not dispute that General Statutes § 29-27, which expressly defines a pistol or revolver as "any firearm having a barrel of less than twelve inches in length," applies to a charge under General Statutes § 29-35, which defines the crime of carrying a pistol without a permit. The state also does not dispute that the length of the barrel is, therefore, an element of that crime and must be proven beyond a reasonable doubt. The sole question is whether the evidence was sufficient for the jury reasonably to conclude that the gun carried by the defendant had a barrel of less than twelve inches in length.

Our review of the record shows that the weapon used in the commission of these crimes was never located, so it was never introduced as an exhibit at trial. While no witness could testify as to the exact length of the barrel, two witnesses, Swinton and Stone, testified that the weapon itself was shorter than one foot. It is a matter of common knowledge that one foot is the same as twelve inches, and that a part is less than the whole. In *State* v. *Brown,* 173 Conn. 254, 260, 377 A.2d 268 (1977), the description of a gun as "a short one, which 'didn't have a long barrel' " was not sufficiently probative evidence "upon which the jury could find the barrel of the firearm was in fact less than twelve inches in length." In the present case, however, the jury could reasonably have concluded, on the basis of the testimony of the two witnesses, that the gun itself was less than twelve inches in length, and therefore the barrel, a part of the gun, was also less than twelve inches in length.[1] We thus conclude that there was legally sufficient evidence presented at trial for the jury to find the defendant guilty of carrying a pistol without a permit.

---

[1] The defendant's only claim on this issue relates to the length of the barrel. We therefore find it unnecessary to review the record for the sufficiency of evidence dealing with other elements of this crime.

## II

The defendant's second claim is that the trial court improperly instructed the jury by failing to define an essential element of the offense of carrying a pistol without a permit. We agree.

The state does not dispute, and we agree, that the definition of "pistol" contained in § 29-27 applies to a charge under § 29-35, and that the length of the barrel is an element of the crime. *State* v. *Allen,* 205 Conn. 370, 374, 533 A.2d 559 (1987); *State* v. *Brown,* supra. The state also agrees that failure to charge on an essential element of a crime is a constitutional defect. *State* v. *Tweedy,* 219 Conn. 489, 510–11, 594 A.2d 906 (1991); *State* v. *Golding,* supra, 238.

Our review of the jury instructions indicates that the court never defined the term "pistol" as specified in § 29-27. The court did not in any fashion, directly or by implication, inform the jury that in order to find the defendant guilty of carrying a pistol without a permit, it was required to find proven beyond a reasonable doubt that the weapon that the defendant carried had a barrel length of less than twelve inches.

The defendant did not object to the jury charge when given but now seeks review under *Evans-Golding*[2] and under the plain error doctrine of Practice Book § 4185.[3] The state argues that this claim is not reviewable because the defendant has failed to demonstrate that a constitutional violation clearly exists and clearly

---

[2] *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

[3] Practice Book § 4185 provides in pertinent part: "This court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court."

deprived the defendant of a fair trial. The state further argues that even if the jury charge was deficient as the defendant claims, the deficiency was harmless beyond a reasonable doubt. We disagree with the state's position.

"A party is entitled to plain error review of an unpreserved claim in 'truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). An important factor to consider when determining if plain error review is necessary is whether the claimed error resulted in an unreliable verdict or a miscarriage of justice." *State* v. *Hopes,* 26 Conn. App. 367, 373, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We conclude that the trial court's failure to charge on an essential element of the crime affected the fundamental fairness of the trial and caused the defendant to suffer a manifest injustice. See *State* v. *Knight,* 29 Conn. App. 675, 617 A.2d 913 (1992). While we agree with the state that a defendant is entitled to a fair trial, not a perfect one; *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982); we do not agree that since the defendant's sole defense was that he did not commit the crime, the only issue before the jury was whether there was a misidentification, and that "[c]ommon sense dictates that [the jury's] concern was limited to the single issue of identification." It therefore follows that we do not agree with the state that "it is clear beyond chance that the instructional deletion was harmless well beyond a reasonable doubt."

It is the state's burden to prove every element of the crime charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Carpenter,* 214 Conn. 77, 82, 570 A.2d 203 (1990); *State* v. *Anderson,* 212 Conn. 31, 36,

561 A.2d 897 (1989). A jury's verdict finding an accused guilty of a crime necessarily includes a determination that the state has proven all the elements of that crime beyond a reasonable doubt. *State* v. *Carpenter,* supra, 85. Such a verdict cannot be upheld unless the jury had a proper instruction from the court as to the law, which must include an identification of each and every essential element for which the state has the burden of proof beyond a reasonable doubt. Without such a basic instruction, we cannot conclude that the jury acted in a fair manner.

The state contends that, even if the trial court had properly instructed the jury, the result here would have been the same; it argues that it "would stretch imagination beyond its tensile strength to believe that this jury in this factual milieu even considered any element of any crime." This argument must fail. Taken to its extreme, it implies that we may completely eliminate the court's instructions to the jury and allow the jury to determine guilt or innocence solely on the facts, without application of the controlling principles of law.

The state further argues that "assuming no serious dispute on the subordinate fact [the requirement that the barrel be less than twelve inches] the issue becomes whether the failure of the court to so charge raises a fundamental constitutional question that the ameliorative effect of the harmless error doctrine should not be considered." The state directs our attention to the majority opinion of the United States Supreme Court in *Arizona* v. *Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), in which the court held for the first time that a coerced confession could be subject to a harmless error analysis.[4] The state posits that *Fulminante* "may well be a harbinger of an exponential expansion of the [harmless error] rule into areas

---

[4] In *Fulminante,* the confession obtained by coercion was found not to be harmless error.

heretofore considered sacred ground." The state asks us to focus "on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." We do not agree. We do not consider this to be an "immaterial" error.

We have previously addressed the situation where the trial court gave *no* instruction on an essential element rather than a *defective* instruction. *State* v. *Payne,* 12 Conn. App. 408, 530 A.2d 1110 (1987). We declined, in *Payne,* to apply a harmless error analysis, because we concluded that "the complete omission of any instruction [on an essential element of the crime] . . . guaranteed that the jury was unable to perform its task properly." Id., 414. In declining to apply a harmless error analysis to that type of instructional error, we recognized "that in *Chapman* v. *California,* 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967), the United States Supreme Court rejected the notion that all federal constitutional errors necessarily require reversal of criminal convictions. In [*Chapman*], the court set forth the principle that a constitutional error may be held to be harmless if the reviewing court concludes that it was harmless beyond a reasonable doubt. In *Chapman,* however . . . the court also recognized that some constitutional errors can never be treated as harmless. Some errors are so *fundamental and pervasive* that they require reversal without regard to the facts or circumstances of the particular case. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Payne,* supra, 414–15.[5]

---

[5] In *Arizona* v. *Fulminante,* 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991), the United States Supreme Court noted its adoption of the general rule in *Chapman* v. *California,* 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 241 (1967), that a constitutional error does not automatically require reversal of a conviction. The rule has allowed that court to apply harmless error analysis to a wide range of errors. In *Fulminante,* however, the court drew a sharp distinction between those cases involving "trial

In *Payne,* we concluded "that the total failure . . . to instruct on the essential elements of the crime charged is analogous to a directed verdict. . . . [This] failure . . . effectively deprived the jury of the opportunity to consider whether those elements were proven. The defendant, however, had elected a trial by jury and was entitled to have that entity apply the substantive law to the facts of the case." Id., 415–16. We further noted that in *Hoover* v. *Garfield Heights Municipal Court,* 802 F.2d 168, 175 (6th Cir. 1986), the Court of Appeals for the Sixth Circuit concluded as we did that a trial court's failure to instruct on an essential element of an offense is an error to which harmless error analysis does not apply. *State* v. *Payne,* supra, 416.

We find the rationale of *Payne* and *Hoover* applicable here, as well, where the trial court failed to instruct the jury that in order to find the defendant guilty of carrying a pistol without a permit it must specifically find that the defendant had carried upon his person a firearm having a barrel less than twelve inches in length. The omission of any instruction on the barrel length of the weapon deprived the jury of the ability to perform its task properly. *State* v. *Payne,* supra, 414. Therefore, the defendant's conviction for carrying a pistol without a permit may not stand.

---

error" and those involving "structural defects." "The common thread connecting these cases [where harmless error analysis has been applied to a constitutional error] is that each involved 'trial error'—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Arizona* v. *Fulminante,* supra, 1264. Other constitutional violations, not subject to harmless error analysis, are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." Id., 1265. Such a violation is not "simply an error in the trial process itself," but is a "structural defect affecting the framework within which the trial proceeds . . . ." Id. Because the failure to instruct on an essential element of the crime charged undermines the basic function of the jury, we perceive that, in the language of *Fulminante,* it is not simply a "trial error," but rather a "structural defect."

## III

The defendant's third claim is that the evidence was insufficient to sustain a conviction for the offense of attempted assault in the first degree because there was no evidence to support a reasonable inference that he either intended to cause serious physical injury to Gerry DelGais or attempted to cause such injury by taking a substantial step toward accomplishing that objective. The defendant asserts that "there is no evidence to link what may well be the reckless discharge of a shot up the stairwell and into the ceiling of the DelGais' second floor landing with the intentional action necessary to constitute an attempted first degree assault of Gerry DelGais." We do not agree.

We earlier set forth the standards for appellate review of a sufficiency of the evidence claim in part I of this opinion. "Intent may be inferred from the conduct of the accused. *State* v. *Carpenter,* [supra, 82]; *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381 (1972). Ordinarily, the intent of the actor is a question for the trier of fact. *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980)." *State* v. *Woods,* 25 Conn. App. 275, 281, 594 A.2d 481, cert. denied, 220 Conn. 923, 598 A.2d 365 (1991). Generally, intent can be proved only by circumstantial evidence. *State* v. *Carpenter,* supra. The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State* v. *Patterson,* 213 Conn. 708, 721–22, 570 A.2d 174 (1990). "It is axiomatic that a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used . . . and the events leading up to and immediately following the incident." *State* v. *Allen,* 28 Conn. App. 81, 89–90, 611 A.2d 886 (1992).

The defendant, armed with a gun, and in the process of committing a felony, raised the gun, pointed it at Gerry DelGais and fired it up a stairway. The shot missed Gerry, who was at the top of the stairs and facing the defendant before he ducked back into his room after seeing a masked intruder with a weapon. On the basis of these facts, the jury legally and rationally could have inferred that the defendant intended to cause serious physical injury by putting a bullet into Gerry Del-Gais rather than into the ceiling where it lodged. "Where there is sufficient evidence to support a reasonable inference that the defendant intended to commit the crime charged, whether such an inference should be drawn is properly a question for the jury to decide." *State* v. *Morrill,* 193 Conn. 602, 609, 478 A.2d 994 (1984).

"To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." (Internal quotation marks omitted.) *State* v. *Green,* 194 Conn. 258, 276, 480 A.2d 526 (1984), cert. denied, 469 U.S. 1191, 105 S. Ct. 964, 83 L. Ed. 2d 969 (1985). "What constitutes a 'substantial step' in any given case is a question of fact." Id., 277. The defendant's overt acts, as discussed earlier, clearly and convincingly demonstrate his firm purpose to commit the crime of attempted assault in the first degree. Our review of the record satisfies us that " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983).

## IV

The defendant's remaining claim concerns his contention that the trial court's denial of his request for a continuance constituted an abuse of discretion and violated his constitutional rights to due process under

the sixth and fourteenth amendments to the United States constitution and article first, § 8, as amended, of the Connecticut constitution.

The following facts are pertinent to this claim. A special public defender was appointed on October 30, 1990, to represent the defendant. The record discloses no attempt to substitute counsel between that date and August 1, 1991, when trial began. The defendant, who was seventeen years old at that time and not free on bond, had his father, who was present, appointed as guardian, and the jury selection process began. Following the luncheon recess, the defendant's father failed to return to court. After it was determined that efforts to reach the defendant's father were unsuccessful, the court then summoned a family relations officer and appointed her guardian ad litem for that day. Jury selection was completed that same day and the matter was continued for the taking of evidence on August 5, 1991.

The defendant's father again failed to appear on August 5, so the court appointed a second family relations officer as the defendant's guardian ad litem for purposes of the trial. The defendant's counsel then sought a continuance because the defendant had told him that his cousin, Jimmy Cooper, had an appointment that morning with a local attorney whom the defendant hoped to retain as private counsel. The court was informed that the public defender's office had verified this by calling Cooper and obtaining the name of the attorney being contacted. The court recessed in an attempt to get that attorney into court, and determined that although the defendant's cousin indeed had an appointment that morning, the attorney in question had canceled the appointment. The court also determined that Cooper was a landscaper who had been represented by that attorney in the past, and that the attor-

ney's schedule might make it difficult for him to handle the defendant's case.

The court denied the defendant's request for a continuance, stating: "You have a question of continuance for the purpose of counsel. And the only viable, articulable fact that you can point to whatsoever, is a phone call from a person named Cooper to the office of Gulash. The rest of the information clearly demonstrates to the court that this accused is under bond for a case he has previously been convicted of. I learn now he is under a sentence of twenty-five years. He has a bond in this case which has never been posted. [H]e has consulted with [private counsel] at the outset of his difficulties and has seen fit not to retain him. There is no indication there is any ability to do so. No representations have been made to that other than Cooper has money but it would be for me to find out and for them to know. Well, this court does not have to go to that burden. The burden is on the defendant to demonstrate an ability. That not being demonstrated in this court on behalf of this application, the court finds no reasonable basis for this court to take this jury, which has been selected and returned here for duty and put them on a shelf and to close down a court of this state on the bold assertion that somebody named Cooper may or may not get a lawyer for the accused. No indication presently [is] obtainable from the lawyer that he is even available to take it on, never mind whether or not compensation required could be met by the parties. It is not a reasonable expectation on this court's [part]. I could not conclude that that is a reasonable request."

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State* v. *Aillon,* 202 Conn. 385, 394, 521 A.2d 555 (1987). "Every reasonable presumption will be made in favor of the trial court's proper

exercise of its discretion. *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985)." *State* v. *Graham,* 21 Conn. App. 688, 703, 575 A.2d 1057, cert. denied, 216 Conn. 805, 577 A.2d 1063 (1990). "We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial." *Thode* v. *Thode,* 190 Conn. 694, 697, 462 A.2d 4 (1983). There is no mechanical test for determining whether the denial of a continuance constitutes an abuse of discretion. A reviewing court "must consider the particular circumstances of each case, paying special attention to the reasons presented to the trial court at the time the request was denied." *Statewide Grievance Committee* v. *Friedland,* 222 Conn. 131, 142, 609 A.2d 645 (1992).

We are aware that the trial court's discretion in granting or denying a request for a continuance should be exercised to accomplish the ends of substantial justice. *State* v. *Battle,* 170 Conn. 469, 476, 365 A.2d 1100 (1976). We are also aware, however, that "[t]o establish an abuse of discretion, the defendant must show that denial of the continuance demonstrably prejudiced his ability to defend himself. *State* v. *Beckenbach,* [supra, 52]; *State* v. *Stanley,* 197 Conn. 309, 311–12, 497 A.2d 46 (1985); *State* v. *Marra,* 195 Conn. 421, 437–38, 489 A.2d 350 (1985)." *State* v. *Jones,* 22 Conn. App. 303, 306, 577 A.2d 293 (1990).

During oral argument, the defendant argued that the denial of his request for a continuance was an abuse of discretion because it deprived him of his right to an attorney of his choice under the sixth amendment to the United States constitution.

"It is clear that a defendant in a criminal matter has a constitutional right to the effective assistance of counsel. . . . The right to counsel, however, does not include . . . an unlimited opportunity to obtain alter-

nate counsel . . . or the absolute right to counsel of one's choice that must give way to the need for fair and efficient administration of justice." (Citations omitted.) Id., 306–307.

"It is well established that the sixth amendment right to counsel is a right to *effective* assistance of counsel, whether that counsel is privately retained or court-appointed. . . . The standard used to review claims of ineffective assistance of counsel is whether defense counsel's performance [was] reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . The defendant, however, has the burden to show that his counsel's conduct fell below that standard and that the lack of competency contributed to the conviction." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Chairamonte,* 189 Conn. 61, 63, 454 A.2d 272 (1983). In order to evaluate the competency of the defense and the harmfulness of any incompetency, an evidentiary hearing is required. Id., 65.

We find no abuse of discretion in the trial court's refusal to grant the defendant's request for a continuance. The defendant has shown no specific prejudice to his defense as a result of this denial. There was no claim that counsel of record was unprepared to go forward. The defendant at no time claimed ineffective assistance of counsel. The court could not be assured that new counsel would be representing the defendant at this trial, which had already begun with counsel of record who had been representing the defendant for over nine months. Further, since the defendant did not request a specific date for a continuance, the court was unable to determine not only *if,* but also *when,* alternate counsel would be available, "thereby making the request for a continuance one for an unspecified duration." *State* v. *Jones,* supra, 307.

The defendant has failed to show that the denial of his request for a continuance demonstrably prejudiced his ability to defend himself. We find no abuse of discretion.

The judgment is reversed as to the conviction for carrying a pistol without a permit only and the case is remanded for a new trial on that charge.

In this opinion the other judges concurred.