STATE OF CONNECTICUT *v.* WILLIAM HAMILTON, JR.
(14704)

PETERS, C. J., BERDON, NORCOTT, KATZ and PALMER, Js.

Argued September 22, 1993—decision released January 11, 1994

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The certified issue in this criminal appeal is the proper standard for appellate review of a trial court's denial of a motion for continuance to retain private counsel. The state charged the defendant, William Hamilton, Jr., with robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49 (a) (2), and carrying a pistol without a permit in violation of General Statutes §§ 29-35 and 29-37 (b). A jury found the defendant guilty as charged and the trial court sentenced him to an effective term of imprisonment of thirty-five years.[1]

The defendant appealed to the Appellate Court, which reversed, in part, the judgment of the trial court, and remanded the matter for a new trial on the charge of carrying a pistol without a permit. *State* v. *Hamilton,* 30 Conn. App. 68, 618 A.2d 1372 (1993).[2] The

[1] The defendant "received twenty year concurrent sentences for the robbery and burglary convictions, a ten year consecutive sentence for the attempted assault conviction, and a five year consecutive sentence for carrying a pistol without a permit." *State* v. *Hamilton,* 30 Conn. App. 68, 69, 618 A.2d 1372 (1993).

[2] In the Appellate Court, the defendant specifically claimed that: "(1) the evidence was insufficient to sustain his conviction for the offense of carrying a pistol without a permit, (2) the trial court improperly instructed the jury on the offense of carrying a pistol without a permit by failing to define an essential element of the crime, (3) the evidence was insufficient to sustain a conviction for the offense of attempted assault in the first degree, and (4) the trial court improperly denied his request for a continuance." *State* v. *Hamilton,* 30 Conn. App. 68, 69–70, 618 A.2d 1372 (1993). With

Appellate Court rejected, however, the defendant's claim that the trial court had abused its discretion in denying the defendant's request for a continuance to enable him to pursue the possibility of obtaining private counsel. We granted the defendant's petition for certification, limited to the issue of the propriety of the standard used by the Appellate Court in reaching this conclusion.[3] Although we disagree with the manner in which the Appellate Court articulated the applicable standard, we concur in its determination that the trial court did not abuse its discretion. We therefore affirm the judgment of the Appellate Court.

The decision of the Appellate Court recites the pertinent facts insofar as they relate to the request for a continuance. "A special public defender was appointed on October 30, 1990, to represent the defendant. The record discloses no attempt to substitute counsel between that date and August 1, 1991, when [the] trial began. The defendant, who was seventeen years old at that time and not free on bond, had his father, who was present, appointed as guardian, and the jury selection process began. Following the luncheon recess, the defendant's father failed to return to court. The court then summoned a family relations officer and appointed her guardian ad litem for that day, after it was determined that efforts to reach the defendant's father were

regard to the first three issues, the Appellate Court determined that: (1) there was legally sufficient evidence presented at trial for the jury to find the defendant guilty of carrying a pistol without a permit; but (2) there was instructional error that warranted reversal of the conviction on that same count; and (3) there was sufficient evidence to sustain the conviction for attempted assault in the first degree. These issues are not before this court.

[3] The precise wording of the issue certified for appeal was: "Did the Appellate Court improperly commingle direct appeal and collateral review standards and thereby arrive at the erroneous and harmful legal conclusion that in order to prevail on a direct appeal claim that the trial court erred in denying the defendant's motion for a continuance to obtain new counsel, the defendant must demonstrate 'specific prejudice' or claim 'ineffective assistance of counsel'?" *State* v. *Hamilton,* 225 Conn. 910, 621 A.2d 290 (1993).

unsuccessful. Jury selection was completed that same day and the matter was continued for the taking of evidence on August 5, 1991.

"The defendant's father again failed to appear on August 5, so the court appointed a second family relations officer as the defendant's guardian ad litem for purposes of the trial. The defendant's counsel then sought a continuance because the defendant had told him that his cousin, Jimmy Cooper, had an appointment that morning with a local attorney whom the defendant hoped to retain as private counsel. The court was informed that the public defender's office had verified this by calling Cooper and obtaining the name of the attorney being contacted. The court recessed in an attempt to get that attorney into court, and determined that although the defendant's cousin indeed had an appointment that morning, the attorney in question had canceled the appointment. The court also determined that Cooper . . . had been represented by that attorney in the past, and that the attorney's schedule might make it difficult for him to handle the defendant's case.

"The court denied the defendant's request for a continuance, stating: 'You have a question of continuance for the purpose of counsel. And the only viable, articulable fact that you can point to whatsoever, is a phone call from a person named Cooper to the office of Gulash. The rest of the information clearly demonstrates to the court that this accused is under bond for a case he has previously been convicted of. I learn now he is under a sentence of twenty-five years. He has a bond in this case which has never been posted. [H]e has consulted with [private counsel] at the outset of his difficulties and has seen fit not to retain [such counsel]. There is no indication there is any ability to do so. No representations have been made to that other than Cooper has money but it would be for me to find out and for them to know. Well, this court does not have to go to that

burden. The burden is on the defendant to demonstrate an ability. That not being demonstrated in this court on behalf of this application, the court finds no reasonable basis for this court to take this jury, which has been selected and returned here for duty and put them on a shelf and to close down a court of this state on the bold assertion that somebody named Cooper may or may not get a lawyer for the accused. No indication presently [is] obtainable from the lawyer that he is even available to take it on, never mind whether or not compensation required could be met by the parties. It is not a reasonable expectation on this court's [part]. I could not conclude that that is a reasonable request.' " *State* v. *Hamilton,* supra, 81–82.

In his appeal to the Appellate Court, the defendant contended that the "denial of his request for a continuance constituted an abuse of discretion and violated his constitutional rights to due process under the sixth and fourteenth amendments to the United States constitution and article first, § 8, as amended, of the Connecticut constitution." Id., 80–81. The defendant also argued that the trial court's denial of his request for a continuance constituted an abuse of discretion "because it deprived him of his right to an attorney of his choice under the sixth amendment to the United States constitution." Id., 83. The Appellate Court noted, however, that "[t]he defendant ha[d] shown no *specific prejudice* to his defense as a result of this denial. There was no claim that counsel of record was unprepared to go forward. The defendant at no time claimed *ineffective assistance of counsel.*" (Emphasis added.) Id., 84. Relying on the defendant's failure to show that the denial of his request for a continuance had demonstrably prejudiced his ability to defend himself, the Appellate Court concluded that the defendant had failed to establish that the trial court had abused its discretion. Id., 85.

## I

We granted the defendant's petition for certification to determine whether the Appellate Court had applied the proper standard in its review of the trial court's denial of his request for a continuance. The defendant maintains that the Appellate Court gave undue weight to the absence of a showing of prejudice as manifested by the unchallenged adequacy of his representation by assigned counsel. He urges that such considerations are improper on a direct appeal because our holding in *State v. Leecan,* 198 Conn. 517, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986), requires him to litigate any question relating to the ineffective assistance of his counsel in collateral proceedings by way of habeas corpus. We agree that the standard articulated by the Appellate Court improperly blurred the factors that enter into direct appellate review of the denial of a continuance.

The basic principles that govern continuances at trial are not in dispute. Once a trial has begun, neither a defendant's right to due process nor his right to be represented by counsel of his choice entitles him to a continuance upon demand. *Sekou v. Warden,* 216 Conn. 678, 686–89, 583 A.2d 1277 (1990) (trial day motion for continuance); *State v. Williams,* 200 Conn. 310, 320, 511 A.2d 1000 (1986) (motion for continuance during jury selection); *State v. Beckenbach,* 198 Conn. 43, 47–50, 501 A.2d 752 (1985) (trial day motion for continuance). " 'In order to work a delay by a last minute [replacement] of counsel there must exist exceptional circumstances.' " *State v. Drakeford,* 202 Conn. 75, 83–84, 519 A.2d 1194 (1987). "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Aillon,* 202 Conn. 385, 394, 521 A.2d 555 (1987).

A reviewing court is bound by the principle that "[e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980); *State* v. *Beckenbach,* supra, 47. To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. *State* v. *Beckenbach,* supra. " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*' " (Emphasis added.) Id., 47–48.

In appellate review of matters of continuances, federal and state courts have identified multiple factors that appropriately may enter into the trial court's exercise of its discretion. Although the applicable factors cannot be exhaustively catalogued, they generally fall into two categories. One set of factors focuses on the facts of record before the trial court at the time when it rendered its decision. From this perspective, courts have considered matters such as: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; the defendant's personal responsibility for the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; the availability of other, adequately equipped and prepared counsel to try the case; and the adequacy of the representation already being afforded to the defendant. *United States* v. *Cicale,* 691 F.2d 95, 106–107 (2d Cir. 1982), cert. denied, 460 U.S. 1082, 103 S. Ct. 1771, 76 L. Ed. 2d 344 (1983); *Linton*

v. *Perini,* 656 F.2d 207, 210 (6th Cir. 1981), cert. denied, 454 U.S. 1162, 102 S. Ct. 1036, 71 L. Ed. 2d 318 (1982); *United States* v. *Burton,* 584 F.2d 485, 490–91 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979); *Gandy* v. *Alabama,* 569 F.2d 1318, 1324 (5th Cir. 1978); *United States* v. *Rastelli,* 551 F.2d 902, 905–906 (2d Cir.), cert. denied, 434 U.S. 831, 98 S. Ct. 115, 54 L. Ed. 2d 91 (1977); *Sekou* v. *Warden,* supra, 686–89; *State* v. *Beckenbach,* supra, 47–50. Another set of factors has included, as part of the inquiry into a possible abuse of discretion, a consideration of the prejudice that the defendant actually suffered by reason of the denial of the motion for continuance. See, e.g., *Linton* v. *Perini,* supra, 209–10; *State* v. *Aillon,* supra, 395; *State* v. *Beckenbach,* supra, 50–52; *State* v. *Stanley,* 197 Conn. 309, 312–13, 497 A.2d 46 (1985). For purposes of assessing actual prejudice, the focus is on the adequacy of the defendant's legal representation subsequent to the trial court's ruling, as distinguished from its likely adequacy as determined by the trial court at the time of its ruling on the motion for continuance.

At the time when the decision to grant or deny a continuance is made, the trial court cannot know with certainty the caliber of the legal representation that will subsequently be afforded to the defendant if the motion for continuance is denied. The subsequent performance of counsel is less relevant to the determination of whether the trial court abused its discretion than to a determination of whether an erroneous denial of a continuance was harmful to the defendant. Although our past rulings on this question have not been entirely consistent; compare *State* v. *Beckenbach,* supra, 47–49 (preruling factors considered), with *Sekou* v. *Warden,* supra, 689 (competence of counsel's performance considered); see *State* v. *Jones,* 22 Conn. App. 303, 307, 577 A.2d 293 (1990) (competence of counsel and prerul-

ing factors considered); the decision of the Appellate Court in this case affords us the opportunity to clarify that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance.

In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. If a claim on appeal is nonconstitutional in nature, "the burden of establishing that harm resulted from a trial court error rests on the appellant." *State* v. *Truppi,* 182 Conn. 449, 465, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Beckenbach,* supra, 49. When a continuance has been requested to obtain new counsel after a trial has begun, the defendant must show, on appeal, that the improper denial of the motion demonstrably prejudiced his ability to defend himself.[4] *State* v. *Beckenbach,* supra, 49–52. For that determination, trial counsel's subsequent performance is highly relevant.[5]

It is with respect to an inquiry into harmful error that an apparent conflict with our decision in *State* v. *Leecan,* supra, arises. *Leecan* delineates the sole appellate procedure for raising constitutional claims of ineffec-

---

[4] We recognize that this analysis has, in the past, been effectuated under the rubric of "abuse of discretion"; see, e.g., *State* v. *Aillon,* 202 Conn. 385, 395, 521 A.2d 555 (1987); *State* v. *Stanley,* 197 Conn. 309, 311–12, 497 A.2d 46 (1985); and that this has led to inconsistency in the application of the standard. For purposes of clarification, therefore, we now term the assessment of actual prejudice to the defendant's case as "harmless error analysis."

[5] See *United States* v. *Burton,* 584 F.2d 485, 498 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979); *Sekou* v. *Warden,* 216 Conn. 678, 689, 583 A.2d 1277 (1990); *State* v. *Beckenbach,* 198 Conn. 43, 51–52, 501 A.2d 752 (1985).

tive assistance of counsel, and requires that all such claims be raised in a habeas corpus proceeding where a full evidentiary hearing may be held. To the extent that our cases imply that a claim of ineffective assistance of counsel *must* be raised to establish that a trial judge has committed reversible error in denying a motion for continuance to obtain new counsel, they appear to conflict with the mandate of *Leecan.*

Upon closer analysis, however, the conflict disappears. We distinguish between two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. In the former class of cases, when a trial court has unreasonably denied a continuance to obtain new counsel, and that error deprives a defendant of his constitutional right to counsel of choice, prejudice would be presumed. See, e.g., *United States* v. *Mendoza-Salgado,* 964 F.2d 993, 1016 (10th Cir. 1992) (it is "[o]nly when the trial court *unreasonably or arbitrarily interferes* with a defendant's right to counsel of choice [that] . . . a conviction cannot stand, 'irrespective of whether the defendant has been prejudiced' ") (emphasis in original); *Linton* v. *Perini,* supra, 210–12 (where trial court abused its discretion in denying continuance and, in doing so, also violated defendant's right to counsel of choice, harmless error test did not apply); *United States* v. *Burton,* supra, 491 n.19, 498 (same); *State* v. *Mebane,* 204 Conn. 585, 595, 529 A.2d 680 (1987), cert. denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d 870 (1988) ("a per se rule of automatic reversal . . . properly vindicates the denial of the defendant's fundamental constitutional right to assistance of counsel guaranteed by the sixth amendment"); *People* v. *Washington,* 195 Ill. App. 3d. 520, 525–28, 552 N.E.2d 1067, appeal denied, 133 Ill. 2d 570, 561 N.E.2d 705 (1990) (no showing of prejudice required where denial of continuance deprived defend-

ant of representation by retained counsel).[6] In the latter class of cases, i.e., claims of a nonconstitutional nature, the defendant must prove *both* an abuse of discretion and harm in order to establish reversible error. See, e.g., *State* v. *Walker,* 215 Conn. 1, 10, 574 A.2d 188 (1990) (when the denial of a continuance is appealed, "[i]t must be shown that the trial judge [1] acted arbitrarily and [2] substantially impaired [the] defendant's ability to defend himself, before an appellate court will [reverse a trial court for an abuse of its] discretion . . . .") (internal quotation marks omitted); *State* v. *Williams,* 200 Conn. 310, 320–21, 511 A.2d 1000 (1986) (on appeal from a denial of motion for continuance under abuse of discretion standard, reviewing court assessed both the reasonableness of the denial and prejudice resulting therefrom); see also *State* v. *Beckenbach,* supra (involving appeal of trial court's denial of motions for continuance to allow counsel of choice to try case, in which the defendant alleged no constitutional violations by virtue of that denial).[7] Because of the twofold nature of this burden, a defendant's failure to prove that the trial court abused its dis-

---

[6] We note that in other situations, where "error touches a less basic constitutional right, we sometimes apply the 'harmless error' exception . . . [i.e.,] we require the state to prove the error harmless beyond a reasonable doubt." (Citation omitted.) *State* v. *Truppi,* 182 Conn. 449, 465, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981) (applying harmless error exception where defendant challenged jury instructions on due process grounds).

[7] We characterize *State* v. *Beckenbach,* 198 Conn. 43, 501 A.2d 752 (1985), as nonconstitutional in nature because there the defendant did not raise on appeal *any* claim that the trial court had violated his constitutional rights (the right to counsel, counsel of choice, or effective assistance of counsel). Id., 45, 49 n.5. Rather, that defendant asserted only that the trial court had abused its discretion in denying his motions for a continuance. Id. We have stated that " '[t]he only questions that we need consider are those squarely raised by the petition for certification, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court.' " Id., 47.

cretion, by arbitrarily denying a continuance, is disposi-
tive of the appeal; a reviewing court need not reach
the question of harm.

It is, thus, only in the situation when a trial court
has been found arbitrarily to have denied a motion for
continuance to obtain new counsel, and that denial does
not rise to the level of a constitutional violation,[8] that
ineffective assistance of counsel becomes relevant on
a direct appeal, because the burden to show harm would
remain on the appellant. While competence of trial
counsel would evidence a lack of harm, a showing of
ineffective assistance of trial counsel would not neces-
sarily prove harm by virtue of the denial of the con-
tinuance, since it is impossible to know the quality of
representation that substitute counsel would have
afforded the defendant. Ineffective assistance of coun-
sel is, therefore, only a potential factor, and not a req-
uisite, to a showing of harm in such a situation. Viewed
from this perspective, there is no conflict with *Leecan.*
Since an appellant is bound by the record to make a
showing of harm, if the record fails, the appeal will fail.
All specific claims of ineffective assistance of counsel
must still be raised in a habeas forum. *State* v. *Leecan,*
supra.

In its review of the trial court's denial of the continu-
ance, the Appellate Court's decision mirrored the con-
fusion in some of our cases by blurring the distinction
between a showing of an abuse of discretion and a
showing of reversible harmful error.[9] *State* v. *Hamil-
ton,* supra, 82–85. We now hold that the correct stan-

---

[8] The determination of whether an arbitrary action by a trial court vio-
lates a constitutional right is made by reference to the constitutional stan-
dard governing the respective right. The standards established for the
protection of the constitutional right to counsel of choice as elaborated under
the sixth and fourteenth amendments to the United States constitution are
set forth, infra, at pp. 249–50.

[9] See footnote 4.

dard does not require a defendant to raise a claim of ineffective assistance of counsel on the issue of the trial court's alleged abuse of its discretion. The defendant's burden on appeal is to show that the trial court acted arbitrarily, in light of the information available at the time of its decision, and thereafter, if an abuse of discretion has been established, that the defendant's ability to defend himself has thereby been demonstrably prejudiced. To pursue this claim, it was not necessary for him to challenge the effectiveness of his assigned counsel.

## II

The Appellate Court's articulation of a mistaken standard of review does not, however, obviate a consideration of the merits of the defendant's claim that he was improperly denied a continuance. Although we could remand this issue to the Appellate Court, we have decided to address the merits ourselves. Because we have before us the same record upon which the Appellate Court would have to act, and because the issue has been fully briefed, we agree with the parties that a final resolution of the defendant's appeal will best serve the interests of judicial economy.

The defendant claims that, in the exceptional circumstances of his case, the trial court's denial of his motion for a continuance to obtain new counsel constituted an abuse of discretion and violated his constitutional rights to counsel under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution.[10] We disagree.

---

[10] Because the defendant has not sufficiently analyzed the state constitution independent of its federal counterpart, we decline to consider this state constitutional claim. *State* v. *Campbell,* 224 Conn. 168, 181 n.12, 617 A.2d 889, cert. denied,      U.S.    , 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1992); *State* v. *Perez,* 218 Conn. 714, 723, 591 A.2d 119 (1991). The defendant's analysis of the state constitutional claim, in its entirety, was as follows: "That [the right to counsel of choice] is also independently secured

The defendant moved for a continuance to obtain private counsel on the second day of trial, after the jury had been impaneled, but before evidence had been presented.[11] The trial court's interest in the efficient administration of justice weighed heavily at that time. *State* v. *Beaulieu,* 164 Conn. 620, 627–28, 325 A.2d 263 (1973).

In its ruling denying the defendant's motion for a continuance, the trial court made no finding that the defendant's motion was either frivolous or motivated by an intent to delay his trial. In the absence of such a finding, little weight should be attached on appeal to the fact that the defendant was incarcerated at the time of the motion and arguably had little to gain from delay.[12] It is significant, however, that the defendant asked for a continuance of unspecified duration, and,

under the Connecticut Constitution is equally clear. Conn. Const., art. I, § 8, as amended by art. XVII. 'This state has had a long history of recognizing the significance of the right to counsel, even before that right attained federal constitutional importance.' *State* v. *Stoddard,* 206 Conn. 157, 164 [537 A.2d 446] (1988); *State* v. *Davis,* 199 Conn. 88, 99–100 [506 A.2d 86] (1986) (as early as 1818 'the advice and services of counsel were regarded as crucial to a criminal defendant' in this state).'' The dissent, nevertheless, reaches and decides the state constitutional issue. In so doing the dissent announces a new standard for our state constitution not adopted by this court. The parties to this appeal, in briefing the state constitutional issue, did not adhere to the guidelines for state constitutional analysis set forth in *State* v. *Miller,* 227 Conn. 363, 380–81, 630 A.2d 1315 (1993), *State* v. *Lamme,* 216 Conn. 172, 177–85, 579 A.2d 484 (1990), and *State* v. *Geisler,* 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), on which the dissent relies. Furthermore, the dissent finds a violation of the state constitution without itself engaging in the multifactor analysis of these cases.

[11] The defendant made contemporaneous motions for a continuance for appointment of a different guardian ad litem in conjunction with a request that the defendant undergo a competency exam. The bases for these separate motions do not inform our inquiry regarding the motion for continuance to obtain new counsel.

[12] An absence of evidence that the defendant intended to delay the proceedings does not, in itself, warrant a finding that the trial court abused its discretion. *State* v. *Beckenbach,* 198 Conn. 43, 50, 501 A.2d 752 (1985).

as the trial court found, made no showing of his then present ability to retain new counsel.[13]

The trial court did not act precipitously in response to the defendant's motion. It took several recesses in order to enable the private counsel whom the defendant sought to retain, or his representative, to appear so that the court might ascertain counsel's willingness and ability to represent the defendant.[14]

Having given the defendant the opportunity to buttress his claim that retained counsel was available to undertake his defense, the court did not abuse its discretion in thereafter denying the defendant's request for a continuance of indefinite duration for a further exploration into the *possibility* of obtaining retained counsel. Neither at that time nor at any subsequent time during the trial did the defendant ever represent to the court that retained counsel was ready and willing to replace his assigned counsel. The trial court was informed that the defendant had actually met with private counsel nine months earlier, at the time of his arrest, but had chosen not to retain him at that time. The trial court could reasonably have taken note of the fact that, in the months between the defendant's arrest and his trial, the defendant had continuously been represented by his special public defender, Attorney David Abbamonte. The defendant's only articulated objection to his assigned counsel was indirect: he did not want *any* public defender because he felt he was being rail-

[13] When questioned by the trial court if his cousin, Jimmy Cooper, could afford to retain private counsel, the defendant responded, "that's for me and him to know." Also, the court was aware that the defendant's counsel of record was a special public defender, appointed on the defendant's prior showing of indigency.

[14] There was evidence presented by Attorney Peter McGuinness, an associate from the office of Attorney Robert Gulash, the private attorney whom the defendant hoped to retain, that he did not believe that Gulash, in the event he did agree to represent the defendant, would be free in the next five to ten days to handle this trial.

roaded by the state. The gravamen of the defendant's complaint was that the same assigned counsel had recently represented him in an unrelated case that had resulted in a sentence of twenty-five years of incarceration. The defendant did not claim, however, that in this case assigned counsel was unprepared to go forward, unskilled in the issues at hand, or unresponsive to the defendant's wishes about the manner in which his defense should proceed. On this record, we cannot conclude that the trial court acted arbitrarily or unreasonably in denying the defendant's motion for a continuance.[15]

Further, the denial of a continuance neither impaired the defendant's right to due process nor did it deprive him of his constitutional right to counsel of his choice. Under a due process standard, it is "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' [that] violates the right to assistance of counsel [of choice]. *Ungar* v. *Sarafite,* 376 U.S. 575, 589, [84 S. Ct. 841, 11 L. Ed. 2d 921] (1964)." *Morris* v. *Slappy,* 461 U.S. 1, 11–12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); *Linton* v. *Perini,* supra, 210. Under the more stringent standard of the sixth amendment, the right to counsel of choice is violated only if a defendant is arbitrarily deprived of a fair opportunity and reasonable time to employ counsel of the defendant's own choosing. *Crooker* v. *California,* 357 U.S. 433, 439, 78 S. Ct. 1287, 2 L. Ed. 2d 1448 (1958), overruled on other grounds, *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *Chandler* v. *Fretag,* 348 U.S. 3, 9–10, 75 S. Ct. 1, 99 L. Ed. 4 (1954); *Linton* v. *Perini,* supra,

---

[15] It is unfortunate that the concurring opinion raises the spectre of race as distorting the just resolution of this case. We all must be sensitive to racial fairness in the administration of justice. The parties themselves, however, have never articulated race as a factor affecting the exercise of the trial court's discretion, nor does the record reveal that the defendant's race had any positive or negative influence on the trial court's ruling.

211–12; *Releford* v. *United States,* 288 F.2d 298, 301 (9th Cir. 1961); *State* v. *Beaulieu,* supra, 628. Here, the defendant had more than nine months between the time of his arrest and trial in order to retain private counsel. In the absence of a showing that the defendant had the financial ability to retain private counsel,[16] was unable to pursue private representation because of some event or circumstance outside of his control,[17] or had identified private counsel who was willing to represent him, we cannot conclude that there was a violation of the defendant's constitutional rights.

It bears emphasis that our review of this matter is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. *State* v. *Aillon,* supra, 394. Therefore, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. Our role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. See *State* v. *Nixon,* 32 Conn. App. 224, 630 A.2d 74 (1993); *Fisher* v. *Fisher,* 28 Conn. App. 483, 487, 611 A.2d 440 (1992).

The judgment of the Appellate Court is affirmed.

In this opinion KATZ and PALMER, Js., concurred.

NORCOTT, J., concurring. I concur in the result reached by the majority. I write separately because I

---

[16] *United States* v. *Inman,* 483 F.2d 738, 739–40 (4th Cir. 1973), cert. denied, 416 U.S. 988, 94 S. Ct. 2394, 40 L. Ed. 2d 766 (1974) (an accused who is financially able to retain counsel must not be deprived of an opportunity to do so).

[17] See *Sekou* v. *Warden,* 216 Conn. 678, 687, 583 A.2d 1277 (1990); see also *United States* v. *Burton,* 584 F.2d 485, 500 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979) (Robinson, J., dissenting) (opportunity to obtain counsel not afforded because of circumstances beyond the defendant's control).

view the question of whether the trial court abused its discretion by failing to grant a short continuance to the defendant so that he could secure private counsel to be much more difficult than the majority indicates in its opinion. I am disturbed by what I perceive to be assumptions that may have been made unconsciously concerning this defendant as he has gone through the judicial process. Although a colorable argument can be made that the trial court's denial of the motion for a continuance may not ultimately have been an abuse of discretion, I think it is a very close call. Further, it is important that the judiciary not allow its actions to be influenced by inappropriate assumptions that, although not rising to the level of an abuse of discretion, are inappropriate in our multicultural society.

The record indicates that the defendant was a seventeen year old African-American male from Bridgeport who was under sentence of twenty-five years in prison for a different crime. At the hearing in question, he was unruly, abusive and profane. The record also indicates that this defendant: (1) had made repeated representations to the trial court that he wished to obtain private counsel; (2) had been represented previously by the public defender assigned to him in this case, which representation had resulted in his being convicted of the crimes charged and sentenced to the aforementioned twenty-five years in prison; (3) was dissatisfied with the performance of the public defender as a result of this previous unsuccessful representation; (4) had a relative who was making a good faith effort to secure private counsel for him; and (5) had members of his family with financial assets that may have been available to pay for private counsel. Additionally, *the state had no objection to granting a continuance to the defendant to obtain private counsel.* On this record, although the defendant's desire for private counsel was reasonable and apparent, the trial court denied his motion.

As already noted, the state had no objection to granting a continuance for the defendant to obtain private counsel. The trial court's denial of the defendant's request was, therefore, motivated solely by a desire to move its docket with expeditiousness. Although the jury had been selected for trial, the state had not begun to present evidence and the defendant had not been put to plea prior to his request for a continuance. Thus, it is difficult to see that a substantial hardship would have been caused by granting a continuance before the defendant's trial had effectively begun. On the facts of this case, I believe the delicate balance between the defendant's constitutional rights and the public interest in efficient administration of justice should have tipped in favor of the former.[1]

The majority correctly points out that under the fourteenth amendment to the United States constitution, a defendant's constitutional right to counsel of choice is violated by "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay . . . ." (Internal quotation marks omitted.) *Morris* v. *Slappy,* 461 U.S. 1, 11–12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). Further, the matter of a continuance is within the discretion of the trial court. Such discretion will not be disturbed on appeal absent clear abuse. *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *State* v. *Olds,* 171 Conn. 395, 402, 370 A.2d 969 (1976). When, however, the reason for the requested continuance is a defendant's exer-

---

[1] My reasoning is limited to the specific and extraordinary facts of this case: the representation of the defendant by the same public defender who had just represented him in a case leading to his conviction and sentence to twenty-five years in prison; the lack of objection by the state to the continuance; the age of the defendant; and no perceived harm in granting a short continuance to the defendant for purposes of pursuing private counsel. I do not mean to suggest that the door be opened for frivolous or dilatory motions for continuance on the eve of trial. *State* v. *Beckenbach,* 198 Conn. 43, 57–59, 501 A.2d 752 (1985).

cise of the sixth amendment right to obtain counsel of choice, the exercise of that discretion requires a delicate balance between the defendant's constitutional right to counsel of choice; see *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Linton* v. *Perini,* 656 F.2d 207, 208 (6th Cir. 1981);[2] and the public interest in efficient administration of justice. *Giacalone* v. *Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971), cert. denied, 405 U.S. 922, 92 S. Ct. 960, 30 L. Ed. 2d 793 (1972).

I do not believe that the record supports the assertion of the majority that the trial court did not act precipitously in response to the defendant's motion. The defendant stated repeatedly that he wished to obtain private counsel because he was dissatisfied with the performance of the special public defender and he believed that he was being "railroaded" by the judicial system. The defendant had arranged to have a named relative schedule an appointment with a named private attorney to inquire as to the attorney's availability and willingness to represent the defendant. In response to this good faith effort on the part of the defendant to secure private counsel, the trial court directed its inquiry to the question of whether the specific attorney whom the defendant was attempting to engage was available to come *immediately* to the court to represent the defendant. Specifically, the trial court asked an associate of the named attorney if the named attorney would "be able to drop everything and take up this case, even if there were some suspicion that he could be compensated."[3] The associate refused to rule out representa-

---

[2] It is clear that a defendant's right to counsel of choice under the sixth amendment, as well as under the fourteenth amendment, is not absolute. *United States* v. *Ely,* 719 F.2d 902, 904 (7th Cir. 1983); *State* v. *Rapuano,* 192 Conn. 228, 233 n.6, 471 A.2d 240 (1984).

[3] It is difficult to imagine that any busy practitioner could have answered in the affirmative to the trial court's inquiry.

tion of the defendant under the circumstances postulated by the trial court. Notwithstanding this refusal, the trial court denied the defendant's motion because there was no representation that the specific lawyer the defendant's relative had attempted to contact was available to represent the defendant immediately. The trial court also stated that there was no indication that the defendant had the ability to pay for private representation, notwithstanding the defendant's assertions that family assets were available to pay for such counsel.

The principal motivation driving the defendant's motion was his need for time to secure private counsel. The defendant had been represented recently in a separate criminal trial by the special public defender assigned to him in this instance. In that case, the defendant had been convicted of certain crimes, and, following the judgment of conviction, sentenced to twenty-five years in prison. It is not surprising that the defendant was dissatisfied with representation that had not been able to prevent his conviction on previous charges. This previous unsuccessful representation was a legitimate reason for the defendant to desire private counsel. Under this record, the majority's assertion that the defendant failed to claim that his "assigned counsel was unprepared to go forward, unskilled in the issues at hand, or unresponsive to the defendant's wishes about the manner in which his defense should proceed," is of little significance: it is not clear that this defendant was sufficiently articulate to have raised such objections to his counsel, nor is it clear that his objections would have had to rise to this level of specificity in order to prevail on his sixth amendment claim. His dissatisfaction with the special public defender, based on that lawyer's unsuccessful representation of him, was sufficient grounds for the defendant to have raised in connection with his motion for a continuance.

I am also troubled by the significance the majority attaches to the fact that the defendant requested a continuance of unspecified duration in order to seek private counsel. It was within the discretion of the trial court to limit the continuance to a reasonable period regardless of the length of time the defendant requested. The fact that the defendant failed to specify a duration for his continuance does not affect his constitutional right to counsel under the sixth amendment.

Similarly, I am confused by the majority's analysis of the defendant's incarceration and his motivation in moving for a continuance. The majority states that because the trial court did not find that the defendant's motion was motivated by a desire to delay his trial, "little weight should be attached on appeal to the fact that the defendant was incarcerated at the time of the motion and *arguably had little to gain from delay.*" (Emphasis added.) The majority's reasoning is syllogistic: because the defendant was incarcerated, he had little to gain from delay, because he had little to gain from delay, we will attach little weight to the fact that he was incarcerated.

In fact, the defendant had nothing to gain and much to lose from delay: specifically, his freedom. Because the defendant was incarcerated as a sentenced prisoner on other charges, were he to receive for the charges in this case a concurrent sentence equal to or greater than that he received in his first trial (a fact that was not unlikely in view of the similar nature of the crimes charged in both instances), any time he served prior to being sentenced for the second set of offenses would have to be repeated—"dead-time" in prison parlance. General Statutes § 18-98d. The defendant's desire for private counsel was sufficiently strong that he was willing to incur the risk of dead-time by seeking a postponement of the commencement of the trial. I believe

that the trial court should have taken judicial notice of this fact when considering the merits of the defendant's motion for continuance.

Although this defendant appeared to be an indigent street tough, he was entitled to a full and fair hearing by the judiciary of this state. Although the defendant may have ultimately failed to retain private counsel, the better course would have been for the trial court to grant a short continuance for him to pursue that reasonable and legitimate request.

Nonetheless, I concur in the result.

BERDON, J., dissenting. I agree with the majority that the Appellate Court was incorrect in holding that the defendant must demonstrate specific prejudice or claim ineffective assistance of counsel in order to overturn the denial of a motion for a continuance to obtain new counsel. Nevertheless, I disagree with the majority's analysis and result in this matter.

The majority reviews the defendant's right to counsel claim under the sixth amendment to the United States constitution. I would not reach the issue under the federal constitution, but rather under the constitution of Connecticut. This sequence of review, although not necessary in every case, is appropriate in the present case. *State* v. *Chapman,* 227 Conn. 616, 626 n.7, 632 A.2d 674 (1993), motion for reargument en banc granted, October 5, 1993. The Supreme Court of the United States has not spoken directly on the issue, and federal law on this point is a tangled thicket of conflicting authorities. See, e.g., *United States* v. *Mendoza-Salgado,* 964 F.2d 993, 1016 (10th Cir. 1992) (prejudice is presumed); *United States* v. *Cicale,* 691 F.2d 95, 107 n.5 (2d Cir. 1982) (prejudice must be shown). This court need not, however, speculate how the United States Supreme Court would analyze the

right to choice of counsel in this context, because the defendant invokes the state constitution as well as the federal constitution.[1] *State* v. *Chapman,* supra, 626.

Before going into my analysis, I must pause to comment on the majority's failure to review the state constitutional issue on the ground that the defendant did not provide an independent analysis. Although there was not an elaborate discussion of the state constitutional issue in the defendant's briefs, he did raise the issue, and cited *State* v. *Stoddard,* 206 Conn. 157, 537 A.2d 446 (1988). In *Stoddard,* discussed herein, we reviewed the historical setting and sociological considerations of the state constitutional right to counsel. In addition, the defendant pointed out decisions of other states, albeit based on federal law, to support his claim that prejudice need not be shown. Within this same analysis the defendant cites a law review article that attacks several settled United States Supreme Court right to counsel precedents that have required a showing of prejudice, including *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (prejudice must be shown to overturn a conviction based on ineffective assistance of counsel). V. Berger, "The Supreme Court and Defense Counsel: Old Roads, New Paths—A Dead End?" 86 Colum. L. Rev. 9 (1986). Of course, it would have been preferable for the defendant to have provided an analysis of all the relevant factors outlined in *State* v. *Geisler,* 222 Conn. 672, 685, 610 A.2d 1225 (1992).[2]

---

[1] It is a well established principle that the federal constitution sets the floor and the state may grant more rights. *Massachusetts* v. *Upton,* 466 U.S. 727, 736, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984) (Stevens, J., concurring). "[F]ederal constitutional . . . law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights . . . ." (Internal quotation marks omitted.) *State* v. *Miller,* 227 Conn. 363, 379, 630 A.2d 1315 (1993).

[2] Pertinent interpretative tools include the text of the state constitution, holdings of this court and the Appellate Court, federal precedent, decisions

Nevertheless, I believe that the defendant did provide an analysis sufficient to entitle him to a review of his state constitutional claim.

In order to determine the standard of review required under the state constitution when a trial court fails to grant a reasonable continuance to obtain preferred counsel for trial, we must examine the underpinnings of the constitutional right to counsel. Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ."[3]

In *State* v. *Stoddard,* supra, this court traced the historical and sociological foundation of the state constitutional right to counsel. Although our decision in *Stoddard* was predicated on the state due process clause as it relates to the right to counsel prior to the initiation of adversary judicial proceedings,[4] the history reviewed in that case is directly relevant to the standard of review required in the present case. Id., 166. Chief Justice Peters wrote for the majority: "This state has had a long history of recognizing the significance of the right to counsel, even before that right

of other states, historical data, and economic/sociological data. *State* v. *Geisler,* 222 Conn. 672, 685–86, 610 A.2d 1225 (1992). Of course, not every factor is relevant to a particular case. *State* v. *Miller,* 227 Conn. 363, 381, 630 A.2d 1315 (1993). For example, in the present case I use in my analysis holdings of this court, federal precedent, decisions of other states and historical data.

[3] Article first, § 9, of the 1818 constitution of Connecticut, the state's first formal constitution, contains identical language on the right to counsel.

[4] In *State* v. *Stoddard,* 206 Conn. 157, 537 A.2d 446 (1988), we held that, under the state constitution, the police are required to inform a suspect whom they are holding for custodial interrogation of timely efforts by counsel to render pertinent legal assistance. We relied on the state constitutional right to due process, rather than the specific right to counsel provision, because the specific right does not attach until after the initiation of adversary judicial proceedings. Id., 166.

attained federal constitutional importance. Until 1836, the common law of England denied the services of counsel to a person charged with a felony for anything but advisory guidance on questions of law. *Powell* v. *Alabama,* 287 U.S. 45, 60, 53 S. Ct. 55, 77 L. Ed. 158 (1932). This rule was defended largely on the theory that the court itself was counsel for the accused. Id., 61.

"Although in 1708 Connecticut enacted a law prohibiting pleading for hire without the express consent of the court; *State* v. *Gethers,* 197 Conn. 369, 389–90 n.19, 497 A.2d 408 (1985); the custom of assigning counsel in all criminal cases quickly became the norm. *State* v. *Davis,* 199 Conn. 88, 99, 506 A.2d 86 (1986). By the end of the eighteenth century, the Connecticut legislature had 'abolished all those odious laws' arising from the English common law tradition and had assured that any person charged with a crime was 'entitled to every possible privilege in making his defence, and manifesting his innocence, by the instrumentality of counsel . . . .' 2 Z. Swift, A System of Laws of the State of Connecticut (1796) p. 399.

"When the customary right to counsel was formally incorporated into the Connecticut constitution in 1818, 'the advice and services of counsel were regarded as crucial to a criminal defendant at any time, especially given the inability of a defendant to testify in Connecticut in 1818.' *State* v. *Davis,* supra, 99–100. More contemporary developments suggest that this state's commitment to securing the right to counsel has not diminished since 1818. Not only was Connecticut 'the first state to adopt the public defender system'; *State* v. *Hudson,* 154 Conn. 631, 635, 228 A.2d 132 (1967); but the right to counsel 'was secured to criminal defendants in this state long before the mandate of *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 [(1962) (holding that the fourteenth amendment

incorporated the sixth amendment right to counsel)]
. . . .' *Spring* v. *Constantino,* 168 Conn. 563, 566–67
n.2, 362 A.2d 871 (1975). The United States Supreme
Court has turned to the historical experience of Con-
necticut in expanding the right to counsel under the
federal constitution. *Faretta* v. *California,* 422 U.S.
806, 827, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Powell*
v. *Alabama,* supra, 62–63." *State* v. *Stoddard,* supra,
164–65.

It is clear, from this rich history, that the fundamental
right to counsel is elevated to the highest order.
"[T]here are some constitutional rights so basic to a
fair trial that their infraction can never be treated as
harmless error . . . . [I]nfringements of a defendant's
constitutional rights in a criminal case where harmless
error analysis is deemed inappropriate involve situa-
tions where the constitutional violation must be deemed
harmful under all circumstances or where it is of such
a nature that ascertainment of its harmfulness is impos-
sible or so difficult as not to warrant the endeavor. Such
cases are rare exceptions to the principle that an other-
wise valid conviction should not be set aside if the
reviewing court may confidently say, on the whole rec-
ord, that the constitutional error was harmless beyond
a reasonable doubt. *Delaware* v. *Van Arsdall,* 475 U.S.
673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)."
(Internal quotation marks omitted.) *State* v. *Mebane,*
204 Conn. 585, 604–605, 529 A.2d 680 (1987), cert.
denied, 484 U.S. 1046, 108 S. Ct. 784, 98 L. Ed. 2d
870 (1988) (*Shea, J.,* concurring); J. Bruckmann, G.
Nash & J. Katz, Connecticut Criminal Caselaw Hand-
book (1989) p. 492.

The present case—that is, the failure to grant a rea-
sonable continuance to obtain preferred counsel—falls
within the category that requires automatic reversal.
Justice Brennan, concurring in *Morris* v. *Slappy,* 461
U.S. 1, 26–27, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983),

pointed out that because of the importance of the right to counsel and the necessary relationship that must exist between the defendant and his counsel,[5] prejudice need not be shown. Justice Brennan reasoned: "[T]here is no way to know whether the character of the proceedings would have changed, whether counsel would have made different decisions, or whether the defense strategy would have been different if [the preferred attorney] had represented respondent. Conclusions based on inquiries into such questions would amount to nothing more than 'unguided speculation.' Under these circumstances, it is reasonable and just not to require a showing of prejudice." *Morris* v. *Slappy,* supra, 28.

Accordingly, I would hold that the standard for our state constitution mirrors that recently set out under the sixth amendment by the Tenth Circuit Court of Appeals. "A conviction attained when a court unreasonably or arbitrarily interferes with an accused['s] right to retain counsel of choice . . . cannot stand, irrespective of whether the defendant has been preju-

---

[5] "Given the importance of counsel to the presentation of an effective defense, it should be obvious that a defendant has an interest in his relationship with his attorney. As . . . noted in *Faretta* v. *California,* 422 U.S. 806, 834 [95 S. Ct. 2525, 45 L. Ed. 2d 562] (1975), '[t]he right to defend is personal.' It is the defendant's interests, and freedom, which are at stake. Counsel is provided to assist the defendant in presenting his defense, but in order to do so effectively the attorney must work closely with the defendant in formulating defense strategy. This may require the defendant to disclose embarrassing and intimate information to his attorney. In view of the importance of uninhibited communication between a defendant and his attorney, attorney-client communications generally are privileged. . . . Moreover, counsel is likely to have to make a number of crucial decisions throughout the proceedings on a range of subjects that may require consultation with the defendant. These decisions can best be made and counsel's duties most effectively discharged, if the attorney and the defendant have a relationship characterized by trust and confidence." *Morris* v. *Slappy,* 461 U.S. 1, 20–21, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983) (Brennan, J., concurring).

diced."[6] (Internal quotation marks omitted.) *United States* v. *Mendoza-Salgado,* supra, 1015. The majority cites to this same standard, but then dilutes the right it purports to set out by stating that a showing of prejudice will be required if an arbitrary denial of a motion for a continuance to obtain new counsel does not "rise to the level of a constitutional violation." This statement clearly conflicts with the rule of *United States* v. *Mendoza-Salgado,* supra. It is difficult for me to conceive how a trial court's *arbitrary* conduct in this context could fail to offend either the federal or state constitution. Indeed, the majority provides no hint of what tests should be utilized to determine when an abuse of discretion fails to rise to the level of a constitutional violation.

The majority cites to three cases in support of its premise that an arbitrary denial of a continuance to *obtain preferred counsel* must rise to a certain level before a defendant need not demonstrate prejudice. Two of the cases have nothing to do with the right to choice of counsel. *State* v. *Walker,* 215 Conn. 1, 10, 574 A.2d 188 (1990) (denial of continuance to investigate case); *State* v. *Williams,* 200 Conn. 310, 320–21, 511 A.2d 1000 (1986) (denial of continuance to obtain testimony of witness). The third case, *State* v. *Beckenbach,* 198 Conn. 43, 501 A.2d 752 (1985), is grounded on the dubious analysis that the defendant in that case never raised the constitutional issue.[7] None of these

---

[6] Such a conviction cannot stand because "[a] defendant's choice of counsel cannot be reduced to a mere procedural formality whose deprivation may be allowed absent a showing of prejudice. The right to choose one's counsel is an end in itself; its deprivation cannot be harmless." *United States* v. *Panzardi Alvarez,* 816 F.2d 813, 818 (1st Cir. 1987).

[7] The court in *State* v. *Beckenbach,* 198 Conn. 43, 49, 501 A.2d 752 (1985), stated that the "only issue decided by the Appellate Court, i.e., whether there was abuse of discretion by the trial judge, presented a question of a nonconstitutional nature," despite the fact that the Appellate Court framed this issue as a constitutional issue. *State* v. *Beckenbach,* 1 Conn. App. 669,

cases shed any light on the perplexing question of just what it would take to elevate an arbitrary denial of a motion for a continuance to obtain substitute counsel to a constitutional violation. Therefore, the majority, interpreting the federal constitution, establishes a novel standard of uncertain application that is unprecedented in the law. To reiterate, I would hold, under the state constitution, that an unreasonable or arbitrary denial of a motion to obtain substitute counsel in and of itself "rises to the level" of a constitutional violation requiring reversal.

In determining whether the trial court abused its discretion in failing to grant a reasonable continuance in order to obtain counsel of choice, I agree with the majority that there are multiple factors to consider. See 2 W. LaFave & J. Israel, Criminal Procedure § 11.4, pp. 39–40 (listing some relevant factors). Each case, however, must be reviewed on its own facts, including subjective factors affecting the individual defendant. From the circumstances of this case, as outlined below, I would find that the trial court did abuse its discretion by not allowing at least a limited one day continuance in order for the defendant to obtain or determine whether he could obtain preferred counsel.

On August 5, 1991, the defendant, William Hamilton, stood on the threshold of his second major felony

674, 476 A.2d 591 (1984). The Appellate Court stated: "The matter of a continuance is traditionally within the discretion of the trial judge, which will not be disturbed absent a clear abuse. . . . When, however, the reason for the requested continuance is the unavailability of a criminal defendant's chosen counsel, the exercise of that discretion requires a delicate balance between, on one hand, the defendant's constitutional right to counsel of his choice . . . which is not absolute . . . and, on the other hand, the public interest in the prompt and efficient administration of justice . . . ." (Citations omitted.) Id. Furthermore, when a defendant seeks a continuance in order to obtain preferred counsel, the constitutional right to counsel is implicitly raised. Any other conclusion would be placing form over substance.

trial. Only seventeen years old, he was serving a twenty-five year sentence arising out of an unrelated trial. Jury selection was complete, but the presentation of evidence had not yet begun when the defendant's special public defender, David Abbamonte, made a motion for a continuance based on the asserted needs (1) to appoint a member of the defendant's family to serve as guardian ad litem, (2) to have the defendant examined in order to determine if he was competent to assist in his defense, and (3) to determine if the defendant's preferred attorney would be willing to represent the defendant in place of Abbamonte.

Abbamonte informed the court that the defendant wanted to retain Attorney Robert Gulash, and that the defendant's cousin, Jimmy Cooper, was going to meet with Gulash that same day. Abbamonte also stated that the defendant's father had stopped attending the trial and no other member of the defendant's family would attend.[8] *The state did not oppose the motion for a continuance.*

The trial court then initiated a colloquy with the defendant that addressed all three of these issues. The defendant told the court that as a child he had been put in special education classes, which he called "bad disorderation" classes, "like for everybody that gets in trouble in school." He had dropped out of school after the eighth grade, and had gone to work in Bridgeport as a landscaper at the age of fifteen.

The defendant outlined his ongoing attempt to obtain the services of Gulash. He stated that Cooper, the only family member he trusted, had told the defendant that Cooper was going to contact Gulash that day. The defendant stated that his family had sufficient assets

---

[8] The trial court noted that, although the defendant's father had attended the first morning of jury selection, he had slept through it and "didn't seem to have any real interest in what was going on."

to pay for a private attorney, and that Cooper was willing to pay for an attorney. The defendant explained that he wanted to retain a private lawyer because "I don't wanna mess with no state lawyer because I know that—I feel that I'm being railroaded in this case."

The court clerk then telephoned Gulash's law office. Gulash was not there, but another attorney in that office, Peter McGuinness, agreed to appear in court immediately. When the court reconvened after a recess, McGuinness was present. He told the court that Cooper, a client of the law firm, had indeed contacted the office that morning, and Gulash had planned to get back to Cooper at 11 a.m., but was required to leave the office because of an emergency in his own family. McGuinness could not say whether Gulash would be able to take the defendant's case.

At this point, a minimal one day continuance would have been sufficient to determine if Gulash, the defendant's preferred counsel, could have represented the defendant. I have no doubt that, had the defendant been a mature adult and not incarcerated during the intervening period between his arrest and the commencement of the trial, under most circumstances, a denial of the continuance would not have been unreasonable. But the defendant was neither mature nor an adult. He was a teenager, a school dropout, incarcerated, and his condition had "deteriorated" according to Abbamonte to the extent that Abbamonte moved for a competency exam for this troubled young man. Of course, a defendant "may not insist upon counsel of choice in a manner which obstructs orderly procedure in the courts or deprives courts of the exercise of their inherent powers to control the orderly course of justice." *United States* v. *Mendoza-Salgado, supra,* 1015. The defendant had no motivation, however, to seek a continuance for the purpose of delay or obstruction of justice. As one court pointed out, an incarcerated

defendant has nothing to gain by seeking delay for its own sake.[9] *Collins* v. *State,* 276 Ark. 62, 65, 632 S.W.2d 418 (1982).

I am troubled by the fact that the majority appears to hold the defendant to the standard of a mature, intelligent and legally savvy individual with a supportive family, a standard that has no application to William Hamilton.[10] The majority attaches "little weight" to the fact that the defendant was incarcerated at the time of his motion, because the trial court made no finding that the defendant's motion was motivated by an intent to delay his trial. In the present case, incarceration is an important factor. The fact that the defendant was incarcerated, coupled with the lack of a supportive family, provides an explanation for why the defendant waited until the time of trial to make his motion.

The majority also states that it is "significant" that the defendant asked for a continuance of unspecified duration. The trial court could easily have inferred from

---

[9] I agree with the concurring opinion that the trial court should have taken judicial notice that the defendant's willingness to incur the risk of "dead-time" underscores the intensity of his desire to obtain substitute counsel, as well as the sincerity of his motives.

[10] The defendant displayed neither maturity nor intellectual sophistication in his colloquy with the trial court. For example, the following exchange occurred:

"The Court: And did you confer with your attorney when they were picking the people to be on this jury?

"[The Defendant]: What?

"The Court: Did you talk to Mr. Abbamonte when you were picking the jury?

"[The Defendant]: About what?

"The Court: About the case and about the selection of the jury and what's going to happen.

"[The Defendant]: I don't know what's going to happen til—til—til after—

"The Court: I don't know either.

"[The Defendant]:—this case is over.

"The Court: Okay. But I'm not— Have you been talking to Mr. Abbamonte?

"[The Defendant]: Naw, not often, no."

the defendant's statements, however, that a one day continuance would be sufficient for his stated purpose of determining if his preferred attorney was available.

The majority also implies that the defendant refused to say whether his cousin could afford to retain private counsel. The defendant clearly answered in the affirmative, although he did refuse to state how much money his cousin had.[11] The trial court did not tell the defendant that his refusal to answer would preclude the relief he sought. At any rate, the only relevant question is whether the cousin or other members of his family had sufficient funds to pay for private counsel, not how much money his cousin had, even if the defendant knew.

The majority next states that the defendant had met with Gulash nine months earlier, but had failed to retain him at that time. The majority fails to consider that subsequent to this meeting, approximately two months before the hearing that is the subject of this appeal, Abbamonte had represented the defendant in the unrelated trial where the defendant was convicted and sentenced to twenty-five years in prison.[12] From the defendant's perspective, the litmus test for Abbamonte's effectiveness was the first trial. In my view, the con-

---

[11] The transcript reads as follows:

"The Court: And did your cousin—does he have any assets that he's willing to spend for attorney's fees?

"[The Defendant]: Yeah, he got money.

"The Court: How much does he have, do you think?

"[The Defendant]: That's—that's—that's for me and him to know.

"The Court: And for me to find out?

"[The Defendant]: Yes.

"The Court: Okay. Do you know what the fee is by Mr. Gulash?

"[The Defendant]: I don't care how much it is.

"The Court: You don't. All right. Fair enough."

[12] Abbamonte stated to the court: "[W]ith regard to another lawyer—of course I realize that this is the second trial with him and I'm the lawyer that represented him when he was convicted the first time and he got twenty-five years. So I can understand his position . . . [that he wants another lawyer to represent him]."

viction and sentence in the unrelated trial constituted a significant change in the defendant's circumstances, rendering irrelevant the fact that the defendant had failed to obtain Gulash's services up to that point in time.

Finally, there is another compelling factor that the majority failed to consider and that weighed heavily in favor of a continuance. At the time of his motion, the defendant had become completely isolated, alienated, and adrift without any meaningful adult guidance. Because the defendant's father would not attend the trial, it was necessary for the court to appoint at least two court family relations officers to act as the defendant's guardians ad litem. It is clear from the representation of the special public defender that there was a perfunctory relationship at best between the defendant and these guardians, and the defendant's mental condition was seriously deteriorating. For example, Abbamonte stated in arguing for a continuance: "But Your Honor knows me. I've been a public defender in this court for going on 15 years and I think this young man's condition is deteriorating rapidly. Plus, right now, although there is a guardian ad litem, he has absolutely no guidance. No one to talk to in terms of family member[s] to discuss this matter rationally and at this point, Your Honor, whether it's Mr. Gulash, some other lawyer or myself that has to try this case, I just think that for his benefit and in the interest of justice, that a continuance [should be] granted for any of the reasons that I stated."[13]

---

[13] Abbamonte's plea to the court merits quoting at length: "Your Honor, the defendant is seventeen as Your Honor's aware. His father was here last Thursday for the morning jury selection and despite orders to the contrary from me, has seen fit not to show up since then and has in fact, made himself scarcer and has absconded and I can't reach him. . . . With regard to this trial, Your Honor, it is the opinion of myself and I believe Mr. Holden [chief public defender] concurs, that this—this young man at this time is not competent to understand the nature of the charges against him and

I agree that we usually defer to the trial court on matters within its discretion. Indeed, in my recent search through the two hundred year recorded history of this court, I found only one criminal case "in which this court . . . held that the trial court's denial of a motion for continuance constituted an abuse of discretion."

to help in his defense. He's 17 years old. His father refuses to come here or any other family member. The guardian ad litem is, as you know, we had a different one the other day. This man, Mr. Tolles, evidently can only stay here til one o'clock. Somebody else will come in this afternoon. We just can't have a meaningful discussion and also we feel that this . . . this young man's condition is deteriorated so much that he doesn't understand what is going on and he can't help his defense. . . . I would ask at this time . . . for a continuance from the court to have this young man examined, number one. Number two, to try and issue a subpoena, if his father isn't available, to some member of the family to come here and sit throughout the proceedings in this situation, if the court doesn't see fit to grant a continuance. But Your Honor knows me. I've been a public defender in this court for going on 15 years and I think this young man's condition is deteriorating rapidly. Plus, right now, although there is a guardian ad litem, he has absolutely no guidance. No one to talk to in terms of family member[s] to discuss this matter rationally and at this point, Your Honor, whether it's Mr. Gulash, some other lawyer or myself that has to try this case, I just think that for his benefit and in the interest of justice, that a continuance [should be] granted for any of the reasons that I stated. Mostly for an examination, number one. Number two, to try and get some member of the family here under subpoena and under threat of some sort of court action if they don't come to sit with him because we just—we just can't have a rational discussion in this matter. Number three . . . with regard to another lawyer—of course I realize that this is the second trial with him and I'm the lawyer that represented him when he was convicted the first time and he got 25 years. So I can understand his position on that, although I also realize it's very late in the proceedings. But I just don't think at this point, Your Honor, that he is fully able to assist in his own defense and I don't think he realizes what his situation is in this case. And I think he's too young and immature to understand and he's also indicated a propensity which he showed towards the end of the last trial, to attempt to disrupt the trial and cause a mistrial and . . . for all these reasons, I would ask that there be a continuance . . . for a . . . competency exam, number one. Number two, to get some sort of family member so we don't have a different Family Relations person here every day, because although we're complying with the law by having someone sit at the table to represent him as guardian ad litem, in actuality . . . [the] person that sits here is not going to have any input. He's not going to have any say in what this young man thinks or does."

*Jackson* v. *Commissioner of Correction,* 227 Conn. 124, 145, 629 A.2d 413 (1993) *(Berdon, J.,* dissenting). I do not know whether this track record tells us something about the trial courts, or about this court. However, other jurisdictions have held such a denial to be so unreasonable that reversal is necessary to safeguard the right to choice of counsel. *Parker* v. *State,* 18 Ark. App. 252, 715 S.W.2d 210 (1986); *People* v. *Little,* 207 Ill. App. 3d 720, 566 N.E.2d 365 (1990); *People* v. *Washington,* 195 Ill. App. 3d 520, 552 N.E.2d 1067 (1990), appeal denied, 133 Ill. 2d 570, 561 N.E.2d 705 (1990); *Commonwealth* v. *Atkins,* 233 Pa. Super. 202, 336 A.2d 368 (1975). When the trial court's interest in saving one day is balanced against the defendant's interest in the possibility of obtaining his preferred counsel, and the defendant's personal circumstances preclude me from dismissing his right as one that should have been exercised earlier, I am compelled to find an abuse of discretion necessitating reversal.

In this case the continuance—a mere day to determine whether the preferred counsel would take the case and was available—would have fostered the appearance of justice and enhanced the credibility of this branch of government. Instead, the defendant and others similarly situated will simply believe they were "railroaded." After the imposition of the thirty-five year sentence in the present case, this teenage defendant's collective sentence for this conviction and his prior conviction totaled sixty years, the equivalent of a life sentence in Connecticut.[14] "[A] right to . . . counsel of choice is secured by this state's constitution. . . . It is among those rights one may claim, notwithstanding society may deem it inconvenient." *Harrison* v. *State,* 520 So. 2d 1352, 1354 (Miss. 1987) (Robertson, J., concurring).

Accordingly, I respectfully dissent.

---

[14] General Statutes § 53a-35b.