******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE ELENA M.*
## (AC 47618)

Bright, C. J., and Moll and Cradle, Js.**

*Syllabus*

The respondent father appealed from the judgment of the trial court terminating his parental rights as to his minor child. He claimed, inter alia, that the court violated his constitutional right to procedural due process by denying his oral motion for a continuance during the trial on the petition to terminate his parental rights filed by the petitioner, the Commissioner of Children and Families. *Held*:

The respondent father's claims on appeal were not moot, as the trial court relied on the prior neglect adjudication to conclude that the petitioner had established the adjudicatory grounds for termination set forth in the statute (§ 17a-112 (j) (3) (B) (i and (E)), both subparagraphs of which required a finding of neglect, and, if this court were to agree with the respondent, then the trial court's reliance on either adjudicatory ground at issue would be undermined, thereby resulting in practical relief to the respondent.

The trial court did not violate the respondent father's constitutional right to procedural due process in denying his motion for a continuance, this court having concluded, after balancing the three factors set forth in *Mathews* v. *Eldridge* (424 U.S. 319) to determine if the denial rendered the trial fundamentally unfair, that the respondent's claim failed under the third prong of *State* v. *Golding* (213 Conn. 233).

This court concluded that the respondent father's claim, in the alternative, that the trial court abused its discretion in denying his motion for a continuance, was unavailing, as the trial court correctly concluded that a continuance would have served no useful purpose and, even if this court were to assume that the trial court abused its discretion, any error was harmless.

Argued October 15, 2024—officially released April 21, 2025***

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** April 21, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of New London, Juvenile Matters at Waterford, where the petition was withdrawn as to the respondent Joshua M.; thereafter Christopher W. was cited in as a respondent; subsequently, the matter was tried to the court, *Hoffman, J.*; judgment terminating the respondents' parental rights; thereafter, the court, *Hoffman, J.*, granted a joint motion to open and vacate the judgment of termination as to the respondent father filed by the petitioner and the respondent father; subsequently, the petitioner withdrew the petition to terminate the respondent father's parental rights; thereafter, the petitioner filed a new petition to terminate the respondent father's parental rights with respect to his minor child; subsequently, the matter was tried to the court, *Hon. John C. Driscoll*, judge trial referee; judgment terminating the respondent father's parental rights, from which the respondent father appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent father).

*Nisa Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

MOLL, J. The respondent father, Christopher W., appeals from the judgment of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights as to his minor child, Elena M., on the ground that he failed to achieve a sufficient degree of rehabilitation pursuant

to General Statutes § 17a-112 (j) (3) (B) (i) and (E).[1] On appeal, the respondent claims that the court (1) violated his constitutional right to procedural due process[2] by denying his oral motion for a continuance during the trial on the operative petition to terminate his parental rights, or (2) in the alternative, the court abused its discretion in denying the motion. We conclude that, in denying the motion for a continuance, the court did not (1) violate the respondent's right to due process or (2) abuse its discretion. Accordingly, we affirm the judgment of the trial court.

The following facts, as found by the trial court or as were undisputed in the record, and procedural history are relevant to our resolution of this appeal. In December, 2020, Elena was born to Dianna L. At the time of

---

[1] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . [or] (E) the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families . . . ."

[2] The respondent does not specify whether his due process claim is raised pursuant to the United States constitution or the Connecticut constitution. Therefore, we treat the respondent's claim as limited to the United States constitution. See *State* v. *Alvarez*, 257 Conn. 782, 796 n.10, 778 A.2d 938 (2001).

Elena's birth, Dianna L. also had two older children, one of whom, Q, was the child of the respondent. Joshua M., the father of Elena's oldest half sibling, O, initially was believed to be the father of Elena.

On December 30, 2020, the petitioner invoked a ninety-six hour hold on Elena. On December 31, 2020, the petitioner filed a neglect petition and obtained an ex parte order of temporary custody of Elena, which was sustained by the trial court, *Hoffman, J.*, on January 8, 2021. On February 4, 2021, the court adjudicated Elena neglected and committed her to the care and custody of the petitioner.

On February 5, 2021, the petitioner filed a petition to terminate the parental rights of Dianna L. and Joshua M. as to Elena. In October, 2021, while this termination petition was pending, Elena's attorney moved for a paternity test of the respondent, which the court granted. On December 28, 2021, Joshua M. was removed from the termination petition after the paternity test results were put into the record. The issue of paternity adjudication was continued, as Elena's mother and the respondent were not present in court when the paternity results were entered into the record, and, on January 27, 2022, the court adjudicated the respondent to be Elena's biological father. On February 14, 2022, the respondent was cited into the termination petition.

On May 13, 2022, following a trial in which the respondent participated, the court terminated the respondent's parental rights as to Elena.[3] On September 19, 2022, the respondent and the petitioner filed a joint motion to open and to vacate the judgment of termination as to Elena on the basis that the respondent had not been

---

[3] Dianna L. consented to the termination of her parental rights on January 24, 2022, and her parental rights were terminated on May 13, 2022.

In addition, the record reflects that the respondent's parental rights as to Q were terminated in May, 2022.

provided with specific steps to facilitate the return of Elena to the respondent pursuant to General Statutes § 46b-129 (b). See also General Statutes § 17a-112 (j) (3) (B) (ii). On October 5, 2022, the court granted the joint motion and reappointed counsel for the respondent. The same day, the petitioner withdrew the petition to terminate the respondent's parental rights.[4] Thereafter, on October 20, 2022, court-ordered specific steps were issued to the respondent.

On April 27, 2023, the petitioner filed a motion to review and to approve a permanency plan of termination of the respondent's parental rights and adoption. On May 26, 2023, the respondent filed an objection to the permanency plan and moved to revoke the order of commitment issued by the court on February 4, 2021, and to transfer legal guardianship of Elena to her paternal aunt.

On June 16, 2023, the petitioner filed a new petition to terminate the parental rights of the respondent on the grounds set forth in § 17a-112 (j) (3) (B) (i) and (E) (operative petition). A trial on the operative petition occurred on October 19, 2023. The respondent appeared and was represented by counsel. One witness, a Department of Children and Families social worker, testified, and several exhibits were admitted into the record.

During trial, the court, *Hon. John C. Driscoll*, judge trial referee, raised, sua sponte, the question of whether the respondent's absence during the proceedings in which Elena was adjudicated neglected had any bearing on the trial on the operative petition. The court took a brief recess to allow the respondent to speak with his counsel. Following this recess, counsel for the respondent argued that both grounds for termination of parental rights raised by the petitioner, found in § 17a-112 (j)

---

[4] The respondent had appealed from the judgment of termination as to Elena on the basis of the petitioner's failure to provide him with specific steps. The respondent withdrew the appeal on October 7, 2022.

(3) (B) (i) and (E), required a determination of neglect, and because the respondent was not a part of the neglect adjudication proceedings, counsel objected to continuing with the trial on that day. Elena's counsel orally moved to cite the respondent into the neglect petition, and the petitioner requested additional time to decide whether to join that motion. Additionally, the petitioner's counsel represented that the petitioner was seeking to amend the operative petition. At approximately 12:51 p.m., the court took a lunch recess and invited the parties to locate any case law pertinent to the issue concerning the implications of the respondent's absence from the neglect proceedings.

The court resumed the proceeding at approximately 2:23 p.m. The petitioner's counsel notified the court that, rather than amending the operative petition, the petitioner intended to proceed on the grounds for termination as pleaded in the operative petition, and Elena's counsel "yield[ed]" to the petitioner. Whereupon the respondent's counsel orally moved for a continuance of unspecified duration, stating that, "because of the stance of the case as it is right now, I need more time to reevaluate [the respondent's] position . . . ." The respondent's counsel later added: "I think [the issue before the court is] a huge issue, and [the respondent] deserves the ability to talk to me to discuss . . . what we need to do at the . . . trial to address this particular issue because it is an issue." Elena's counsel objected to the motion for the continuance, arguing that the petitioner had not amended the operative petition and Elena was "deserving of permanency." The petitioner's counsel did not object to the motion for the continuance but argued that "there's no need for [the petitioner] to cite the [respondent] into a petition that was already disposed of. If the [respondent] wanted to challenge the neglect adjudication, he should have moved to open the judgment within four months. If he didn't, he could've

moved to do a motion to revoke, which we have in this case. We have a motion to revoke and transfer guardianship to the aunt, which was not pursued for today's trial. . . . [T]he [neglect] adjudication goes to [Elena], and all the [petitioner] has to prove with that is that [Elena] was adjudicated neglected, which she was. . . . [T]he [petitioner] doesn't have to prove that the [neglect] adjudication goes to the [respondent]."

After hearing argument from counsel, the court denied the respondent's motion for a continuance. At the outset, the court noted that, notwithstanding the respondent's involvement in the prior proceedings that resulted in the May 13, 2022 judgment of termination as to Elena, as well as in simultaneous termination proceedings concerning Q, as to whom the respondent's parental rights were terminated, "[a]t no time . . . was there [a] representation that [the respondent] had a right to [a] neglect adjudication or adjudicatory hearing" with regard to Elena. The court then relied on *In re Zoey H.*, 183 Conn. App. 327, 192 A.3d 522, cert. denied, 330 Conn. 906, 192 A.3d 425 (2018), and *In re Ja'Maire M.*, 201 Conn. App. 498, 242 A.3d 747 (2020), cert. denied, 336 Conn. 911, 244 A.3d 563 (2021), in concluding that the respondent's "due process rights have not been invalidated by the prior [neglect] adjudication. It was as to the status of [Elena], without regard to his not being in the picture at the time, and so . . . [that adjudication] stand[s]. We're not going to permit a collateral attack on it and say that [the respondent] has a right to have an independent hearing now to determine whether or not [Elena] should've been adjudicated as to him. Noting as well, that as I said, [the respondent] was appointed counsel and his counsel assumed that he was in the neglect case and made filings, motions, and objections in the neglect case. . . . [T]hrough counsel he was given his permanency plan. He objected to it. He was given a hearing on it before

Judge Hoffman and the matter was—at least the permanency plan itself, the issue of the appropriate plan—was consolidated with this trial. So, I see no need for a continuance, and I see no need for an independent adjudication." The trial proceeded and concluded on that same day.

On February 8, 2024, the court issued a memorandum of decision terminating the respondent's parental rights and appointing the petitioner as Elena's statutory parent. The court determined in relevant part that the petitioner had demonstrated by clear and convincing evidence that (1) Elena had been adjudicated neglected on February 4, 2021, (2) the Department of Children and Families had made reasonable efforts to locate the respondent and to reunify him with Elena, and (3) the respondent had failed to rehabilitate sufficiently under § 17a-112 (j) (3) (B) (i) and (E). Further, the court concluded that termination of the respondent's parental rights was in Elena's best interest. This appeal followed.[5] Additional facts and procedural history will be provided as necessary.

At the outset, we set forth the following relevant legal principles. "Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. . . . Subdivision (3) of § 17a-112 (j) carefully sets out . . . [the] situations that, in

---

[5] Pursuant to Practice Book § 67-13, Elena's counsel filed a statement adopting the petitioner's appellate brief.

the judgment of the legislature, constitute countervailing interests sufficiently powerful to justify the termination of parental rights in the absence of consent. . . . Because a respondent's fundamental right to parent his or her child is at stake, [t]he statutory criteria must be strictly complied with before termination can be accomplished and adoption proceedings begun. . . .

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence. . . .

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . In the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [respondent's] parental rights is not in the best interest of the child." (Footnote omitted; internal quotation marks omitted.) *In re Gabriella M.*, 221 Conn. App. 827, 831–33, 303 A.3d 319, cert. denied, 348 Conn. 925, 304 A.3d 443 (2023).

I

Before turning to the merits of the respondent's claims on appeal, we preliminarily address the petitioner's argument that the respondent's claims are moot. The petitioner contends that, "[a]ssuming [the respondent's] claims relate to the trial court's . . . finding [pursuant to § 17a-112 (j) (3) (B) (i)], there is no practical relief that this court can afford [the respondent]" because proof of the separate ground, § 17a-112 (j) (3) (E), would be sufficient to terminate the respondent's parental rights. The respondent argues that his claims

on appeal implicate both of these grounds for termination on which the court relied in terminating his parental rights, such that this appeal is not moot. We agree with the respondent.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . The fundamental principles underpinning the mootness doctrine are well settled. We begin with the four part test for justiciability . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by the judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . .

"[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the [parties] in any way." (Internal quotation marks omitted.) *State* v. *Marsala*, 204 Conn. App. 571, 575–76, 254 A.3d 358, cert. denied, 336 Conn. 951, 251 A.3d 617 (2021).

In its decision terminating the respondent's parental rights, the court relied on the prior neglect adjudication of February 4, 2021, to conclude that the petitioner had established the adjudicatory grounds set forth in § 17a-112 (j) (3) (B) (i) and (E),[6] both of which required a

---

[6] The petitioner maintains that the court's decision is ambiguous as to whether the court relied on the prior neglect adjudication in concluding that the adjudicatory ground of § 17a-112 (j) (3) (E) was satisfied. We disagree. Although the court did not make a separate finding of neglect during the trial on the operative petition, it acknowledged that Elena had been found neglected in a prior proceeding.

finding of neglect.[7] The crux of the respondent's claims on appeal is that the court erred in denying him a continuance of the termination trial to provide him with additional time to develop an argument concerning his absence from the neglect proceedings that resulted in the prior neglect adjudication upon which the court relied in rendering the judgment of termination. If we were to agree with the respondent, then the court's reliance on *either* adjudicatory ground at issue would be undermined, thereby resulting in practical relief to the respondent. The petitioner's assertion—that, even if we were to accept the respondent's arguments on appeal, the court's finding with regard to the adjudicatory ground set forth in § 17a-112 (j) (3) (E) would still stand—is unavailing. We therefore conclude that the respondent's claims on appeal are not moot.

## II

We now turn to the respondent's first claim on appeal. The respondent claims that the trial court violated his constitutional right to procedural due process in denying his motion for a continuance during the trial on the operative petition. We disagree.

Before addressing the merits of the respondent's first claim, we set forth the following relevant legal principles. The respondent concedes that he did not raise his constitutional claim before the trial court, and, therefore, he seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding* review, "a [respondent] can prevail on a claim of constitutional error not preserved at trial

---

[7] As our Supreme Court has explained, "under § 17a-112 (j) (3) (B) (i), the trial court may grant a petition for termination only if there was a finding of neglect in a *prior* proceeding, whereas pursuant to § 17a-112 (j) (3) (E), the petitioner may seek a simultaneous adjudication of neglect and a judgment terminating parental rights." (Emphasis in original.) *In re Jayce O.*, 323 Conn. 690, 712, 150 A.3d 640 (2016).

only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the [petitioner] has failed to demonstrate harmlessness [of the alleged constitutional violation] beyond a reasonable doubt. . . . [T]he inability to meet any one prong requires a determination that the [respondent's] claim must fail. . . . The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis omitted; internal quotation marks omitted.) *In re Jadiel B.*, 228 Conn. App. 290, 306, 324 A.3d 211, cert. denied, 350 Conn. 921, 325 A.3d 217 (2024). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the [respondent] may prevail." (Internal quotation marks omitted.) *In re Skye B.*, 230 Conn. App. 725, 737, 331 A.3d 769 (2025).

The respondent argues that the court violated his constitutional right to due process when his motion for a continuance was denied because the court's denial "prevented [him] from raising arguments relevant to an accurate determination of the questions of law raised by the trial court . . . ." The respondent contends that his unpreserved claim satisfies all four prongs of *Golding*. The petitioner agrees that the first two *Golding* prongs have been satisfied, but she argues that the respondent's unpreserved claim fails on the third and fourth prongs of *Golding* because there was no constitutional violation and any violation was harmless beyond a reasonable doubt.

We agree with the parties that the first two *Golding* prongs have been satisfied, and, therefore, the respondent's unpreserved claim is reviewable. As to the first

prong, the record demonstrates that the respondent moved for a continuance during trial, the reasons for such motion were stated by his counsel, and the court's denial of the continuance, as well as the reasons supporting the denial, were stated on the record. As to the second prong, the respondent's constitutional right to due process in the custody and care of his child was implicated. See *In re Lukas K.*, 120 Conn. App. 465, 473, 992 A.2d 1142 (2010), aff'd, 300 Conn. 463, 14 A.3d 990 (2011). The respondent's claim, however, fails to satisfy the third prong of *Golding*, as we conclude that there was no violation of the respondent's right to due process.

Whether a due process violation occurred when the motion for a continuance was denied requires this court to apply the three-pronged test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). See *In re Matthew P.*, 153 Conn. App. 667, 675, 102 A.3d 1127, cert. denied, 315 Conn. 902, 104 A.3d 106 (2014); see also *In re Shaquanna M.*, 61 Conn. App. 592, 604–605, 767 A.2d 155 (2001) ("[c]ourts analyze termination of parental rights cases involving procedural due process claims using the test articulated in *Mathews* v. *Eldridge*, [supra, 335], rather than using an abuse of discretion standard"). "The three factors [from *Mathews*] to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. . . . The bottom-line question is whether the denial rendered the trial fundamentally unfair in view of the *Mathews* factors." (Citation omitted.) *In re Shaquanna M.*, supra, 606. We review constitutional claims de novo. Id., 600.

As to the first factor, "the private interest that will be affected by the state action"; id., 606; we agree with the respondent that his private interest in retaining his parental rights as to Elena is substantial and weighs in his favor. See, e.g., *In re Zoey H.*, supra, 183 Conn. App. 341 (in analyzing first factor from *Mathews*, this court held that respondent's "private interest in directing the care and custody of his biological child is substantial"); *In re Matthew P.*, supra, 153 Conn. App. 676 ("It is axiomatic that the respondent has a constitutionally protected interest in [his] parental rights. . . . Because a petition to terminate parental rights threatens this fundamental interest, the first *Mathews* factor weighs in favor of the respondent." (Citations omitted.)).

As to the second factor, we are not persuaded that the court's denial of the respondent's motion for a continuance created a substantial "risk of an erroneous deprivation" of the respondent's private interest, nor that granting the continuance would have been a valuable additional procedural safeguard for the respondent. See *In re Zoey H.*, supra, 183 Conn. App. 341.

This court's decision in *In re Ja'Maire M.*, supra, 201 Conn. App. 498, is controlling here. In that case, the respondent father appealed from the judgment of the trial court terminating his parental rights with respect to his child. Id., 499. "On appeal, the respondent claim[ed] that, in terminating his parental rights, the trial court improperly relied on a finding that the child was neglected, which was made at a previous proceeding at which the respondent was not present" and at a time when his paternity had not yet been established. Id., 499–500. This court held that "a parent who is absent from neglect proceedings is not denied due process when his or her parentage of the child is not yet known." Id., 508. The court explained that "[a] finding that a child is neglected is not a finding of fault against the parent but a fact relating to the status of the child. See

*In re T.K.*, 105 Conn. App. 502, 505–506, 939 A.2d 9, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008) ([A]n adjudication of neglect relates to the status of the child . . . . Although § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . .); see also *In re Zamora S.*, 123 Conn. App. 103, 110, 998 A.2d 1279 (2010) ([a] neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named . . .); *In re David L.*, 54 Conn. App. 185, 193, 733 A.2d 897 (1999) ([t]he statutes and rules of practice . . . do not afford a parent in a neglect proceeding the right to require the trial court to adjudge each parent's blameworthiness for a child's neglect)." (Internal quotation marks omitted.) *In re Ja'Maire M.*, supra, 508. Therefore, the respondent's due process claim on appeal was deemed "an impermissible collateral attack on the validly rendered neglect judgment . . . ." Id., 505. We reach the same conclusion here.

As previously stated, the respondent's private interest at stake was retaining his parental rights as to Elena. The denial of the motion for a continuance, however, did not risk the erroneous deprivation of this right. Neither in his appellate briefs nor during oral argument before this court did the respondent identify a successful argument that could have been made regarding his absence from the proceedings leading to the neglect adjudication had the motion for a continuance been granted. Indeed, the respondent's circumstances are substantially similar to those of the respondent father in *In re Ja'Maire M.*, as his parentage was unknown at the time of the neglect adjudication. See id., 505–508. Additionally, as this court in *In re Ja'Maire M.* iterated,

a neglect adjudication concerns the status of the child and does not establish fault against a parent. Id., 508.

The respondent attempts to distinguish this case from *In re Ja'Maire M.* by stating that, "under the circumstances present in *In re Ja'Maire M.*, the [father's] absence from the neglect proceeding did not deprive him of any due process, because the [petitioner] subsequently joined him to the proceedings and the court advised him of the avenues available to him to challenge the judgment," whereas here, "[t]he respondent was never advised by the trial court that he had the ability to challenge these rulings." The respondent's argument, however, is unavailing. Although the court in *In re Ja'Maire M.* mentioned that the respondent father in that case was advised of the dispositional avenues available to him; *In re Ja'Maire M.*, supra, 201 Conn. App. 511; our reading of the case in the totality does not lead us to the conclusion that an advisement of the "variety of ways" the respondent could have challenged the neglect adjudication was deemed necessary to protect the respondent father's due process rights.

The respondent also attempts to distinguish this case from *In re Ja'Maire M.* by citing the fact that, in the present case, he "was not joined [until] almost a year after the neglect determination. The time for filing a motion to open had passed. The time to appeal the neglect determination had passed." In contrast, the respondent posits, the respondent father in *In re Ja'Maire M.* was joined into the case before the statutory four month period for opening the judgment had expired. This argument, however, ignores the fact that the respondent could have moved to open the neglect judgment, despite the four month limitation set forth in General Statutes (Rev. to 2021) § 52-212a,[8] pursuant

_____

[8] General Statutes (Rev. to 2021) § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open

to the common-law exception of mutual mistake, if he had a good faith basis for doing so. See *In re Jonathan M.*, 255 Conn. 208, 238, 764 A.2d 739 (2001) (recognizing that, at common law, "even a judgment rendered by the court . . . can subsequently be opened [after the statutory four month limitation] . . . if it is shown that . . . the judgment, was obtained . . . because of mutual mistake" (internal quotation marks omitted)); see also *In re Santiago G.*, 318 Conn. 449, 475, 121 A.3d 708 (2015) (affirming trial court's denial of motion to open adjudication of neglect following trial on motion to open because movant could not demonstrate that adjudication of neglect was based on factual mistake); *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992) (holding that "[c]ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments, to vacate any judgment obtained by fraud, duress or mutual mistake").

Moreover, a respondent may also file a motion to revoke commitment of his child, even when parentage is established after a neglect adjudication is made and the attendant appeal period has expired. See *In re Ja'Maire M.*, supra, 201 Conn. App. 511. Indeed, in the present case, before the petitioner had filed the operative petition, the respondent moved to revoke the February 4, 2021 commitment order, which motion the respondent did not pursue at trial. In short, after being cited into the present case in February, 2022, the respondent had procedural mechanisms by which he could have challenged the neglect adjudication, and he chose not to pursue those options.

In light of the foregoing, we conclude that the court did not create a risk of an erroneous deprivation of the respondent's rights to the care and custody of Elena,

or set aside is filed within four months following the date on which it was rendered or passed. . . ."

and granting the continuance would not have been a valuable additional procedural safeguard. See *In re Zoey H.*, supra, 183 Conn. App. 341. Additional time to formulate argument would not have yielded any basis for the respondent to challenge the neglect adjudication. Thus, the second factor weighs in favor of the petitioner.

Lastly, as to the third factor of the *Mathews* test, "the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements"; (internal quotation marks omitted) id., 336; we conclude that the government's interest in the court granting the respondent's motion for a continuance is low and a continuance would have imposed greater fiscal and administrative burdens on the court and the parties. "[T]he government's interest in [a] termination proceeding . . . is twofold. First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child." (Internal quotation marks omitted.) *In re Matthew P.*, supra, 153 Conn. App. 679. A continuance in the present case would have caused greater fiscal and administrative burdens on both the court system and the parties, as the trial on the operative petition would have been extended, despite the fact that the parties were present and ready to proceed with trial on the day the respondent moved for the continuance. See id., 680 ("[T]he state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . In light of the fact that all party representatives and the petitioner's witnesses were present on the first day of trial, we conclude that delaying the proceeding by granting the continuance would have

resulted in the very economic and administrative burdens on resources considered by this prong." (Citation omitted; internal quotation marks omitted.)).

Moreover, the government's interest would have been adversely impacted by a continuance due to the nature of this proceeding, namely, the termination of parental rights with respect to a child. As the respondent concedes, it is in the government's interest, as parens patriae, to resolve this case as expeditiously as possible, as the well-being of Elena is left in limbo by ongoing proceedings. See *In re Alexander V.*, 223 Conn. 557, 565, 613 A.2d 780 (1992) (recognizing that "state has a vital interest in expediting the termination proceedings and that that interest would be adversely affected by any delay"). Therefore, the third *Mathews* factor weighs against the respondent and in favor of the petitioner.

In sum, in balancing the three *Mathews* factors, we conclude that the respondent has failed to demonstrate that an "alleged constitutional violation . . . exists and . . . deprived the [respondent] of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Alexis*, 194 Conn. App. 162, 173, 220 A.3d 38, cert. denied, 334 Conn. 904, 219 A.3d 800 (2019). Therefore, the respondent's claim fails under *Golding*'s third prong.

### III

The respondent next claims, in the alternative, that the trial court abused its discretion in denying the respondent's motion for a continuance. In connection with this claim, the respondent contends that "[t]he failure to grant an extension under [the] circumstances was unreasonable and arbitrary" because (1) he was not seeking a lengthy continuance, (2) the impact of the delay would have been negligible, (3) the motion for a continuance was made for a legitimate reason, and (4) the denial of the motion impacted his ability to mount a defense. The respondent also claims that he

was harmed by the denial of the motion. We conclude that the respondent has demonstrated neither an abuse of the court's discretion nor harm.

"A reviewing court ordinarily analyzes a denial of a continuance in terms of whether the court has abused its discretion. . . . This is so where the denial is not directly linked to a specific constitutional right." (Citations omitted.) *In re Shaquanna M.*, supra, 61 Conn. App. 601. "Discretion involves a choice by a court to do or not to do something that one cannot demand as an absolute right. Courts exercise discretion in cases where impartial minds could hesitate, which exercise usually entails a balancing of the relative gravity of the factors involved. . . . An abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Citation omitted.) Id., 603. Such a standard "affords the trial court broad discretion in matters of continuances." (Internal quotation marks omitted.) *Bevilacqua* v. *Bevilacqua*, 201 Conn. App. 261, 268, 242 A.3d 542 (2020).

Our Supreme Court has "articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: 'the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the [respondent's] personal responsibility for the timing of the request . . . .' *State* v. *Hamilton*, 228 Conn. 234, 240, 636 A.2d 760

(1994). 'In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis.' Id., 242." *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003). In *State* v. *Hamilton*, supra, 242, our Supreme Court "clarif[ied] that an appellate court should limit its assessment of the reasonableness of the trial court's exercise of its discretion to a consideration of those factors, on the record, that were presented to the trial court, or of which that court was aware, at the time of its ruling on the motion for a continuance."

Mindful of these principles, we turn to the respondent's contention that the court abused its discretion in denying the motion for a continuance and harmed the respondent by doing so. First, considering those previously enumerated factors that were presented to the court, or of which the court was aware, we conclude that the court did not abuse its discretion. Concerning the timeliness of the request for a continuance, it is significant that twenty months had passed from the time the respondent was cited into the termination petition, which gave him ample time to question, on his own, the applicability of the court's prior neglect finding. During that period, he did not do so, while having participated in the first termination trial in May, 2022.

With regard to the likely length of a delay, it is notable that the respondent's motion was for a continuance of unspecified duration. " 'This court and our Supreme Court have upheld denials of requests for continuances when they are sought for indefinite durations. See, e.g., *State* v. *Gordon*, 197 Conn. 413, 424A–C, 504 A.2d 1020 (1985); *State* v. *Mendez*, [45 Conn. App. 282, 285–86, 696 A.2d 352 (1997)].' *State* v. *Wright*, 70 Conn. App. 807, 821, 800 A.2d 1218, cert. denied, 261 Conn. 930, 806 A.2d 1070 (2002)." *State* v. *Wilcox*, 105 Conn. App. 24, 34, 936 A.2d 295 (2007), cert. denied, 286 Conn. 909, 944 A.2d 981 (2008); see also *State* v. *Hamilton*, supra,

228 Conn. 247–48 ("It is significant, however, that the defendant asked for a continuance of unspecified duration, and, as the trial court found, made no showing of his then present ability to retain new counsel. . . . Having given the defendant the opportunity to buttress his claim that retained counsel was available to undertake his defense, the court did not abuse its discretion in thereafter denying the defendant's request for a continuance of indefinite duration for a further exploration into the possibility of obtaining retained counsel." (Emphasis omitted; footnotes omitted.)); *State* v. *Wilcox*, supra, 33–34 ("Under the circumstances, and with due regard for broad leeway possessed by trial courts to grant or to deny continuances, it cannot be said that the panel abused its discretion in denying the plaintiff in error's request for a continuance. . . . A continuance likely was to be of indefinite duration because the plaintiff in error sought a continuance until his federal habeas petition was decided at some unspecified date in the future and furthermore did not indicate whether he would abide by the District Court's ruling." (Footnote omitted.)).

Perhaps most importantly, with regard to the legitimacy of the reasons proffered in support of the motion—the factor on which the trial court placed the greatest weight—the court correctly concluded that a continuance would have served no useful purpose. Even on appeal, the respondent has not identified how additional time to research the applicability of the prior neglect finding would have yielded a different outcome.

Second, even if we were to assume that the court abused its discretion in denying the motion for a continuance, any error was harmless. See *Boccanfuso* v. *Daghoghi*, 193 Conn. App. 137, 170, 219 A.3d 400 (2019) ("even if the court did abuse its discretion in refusing to grant a continuance for the presentation of . . . testimony, any error was harmless"), aff'd, 337 Conn. 228, 253 A.3d

1 (2020). In support of his contention that the court's ruling was harmful, the respondent argues that his "trial counsel [could not] be expected to react in real time to multiple and contradictory arguments from the trial court itself, to multiple requests to amend the operative petition . . . and to the emergence of a thorny legal issue that required careful deliberation. The failure of the trial court to grant the respondent's request for a continuance led to a fundamentally unfair trial." The respondent's vague assertions that the denial led to a fundamentally unfair trial, "prevented the trial court from hearing complete, informed, and robust argument on the issues raised," and "impacted the respondent's ability to mount a defense" do not identify any actual harm that occurred on the basis of the denial. In fact, during oral argument before this court, the respondent's counsel again failed to identify a successful route the respondent could have taken regarding the underlying challenge to the neglect adjudication. Despite counsel's cursory statement during oral argument that the respondent would have succeeded if he had time to make the arguments proffered in his brief on appeal, such an argument is unfounded on the basis of this court's precedent, including *In re Ja'Maire M.* See *In re Ja'Maire M.*, supra, 201 Conn. App. 508 ("a parent who is absent from neglect proceedings is not denied due process when his or her parentage of the child is not yet known").

In sum, we conclude that this claim fails on the independent grounds that the respondent has demonstrated neither an abuse of the court's discretion nor harm.

The judgment is affirmed.

In this opinion the other judges concurred.